JOHN E. THOMAS

*v.*

THOMAS COULTAS *et ux.*

1. CHANCERY PRACTICE—*relieving against mistake in pleadings.* While, in cases where the bill is sworn to, the courts always act with great caution in permitting the complainant to amend the same, and make repugnant allegations, and to prove them, and have relief thereon, yet such a practice is always allowed to prevent the failure of justice, on a proper showing. Where it is manifest the complainant is honestly mistaken as to facts charged in his bill, it may be allowed.

2. Where a husband and wife file a bill to rescind a contract for the exchange of the wife's real estate for lands of the defendant, on the ground of fraud, and for injunction, which was sworn to by the husband, and afterwards the complainants asked to be relieved from certain statements in the bill as to the terms of the contract, and to amend the same by stating the contract correctly, and it was shown that they were denied the privilege of examining the contract until obtained under rule of court, the same not having been recorded, which was allowed: *Held*, that there was no error in relieving from the mistake and allowing the amendment, as the wife ought not to lose her rights because her husband, acting as her agent, did not state the contract correctly.

3. FRAUD—*rescission of contract for exchange of lands.* Where the complainants exchanged a house and lot for defendant's farm, which he represented as incumbered by a mortgage of $2500, and which the complainants were to assume, and pay the defendant $700, and convey to him

also a half section of land in Kansas, and it appeared that there were judgment liens upon the farm to the amount of $1300, and that the defendant owned only five-sixths of the farm, the other one-sixth being outstanding, all of which the defendant knew, but concealed the fact from the complainants: *Held*, this was such a fraud as authorized the complainants to rescind the agreement upon discovery of the fraud.

4. TENDER—*not necessary to a rescission for fraud.* Where one of the contracting parties is guilty of fraud, the other may, without offering to perform his part of the contract, rescind. It is only in cases free from fraud that a party must put the other in default by performing, or offering to perform, before he can rescind. The fraud vitiates the contract, and absolves the party upon whom it is practiced, from performance.

5. RESCISSION—*right to, for fraud not avoided by subsequent matters.* Where a party filed a bill to rescind a contract for the exchange of lands on the ground of fraud in concealing the fact of there being judgments which were liens on defendant's lands at the time, the discharge of such liens, after bill filed, will not affect the complainants' rights in the least. The filing of the bill in such a case is a rescission, and an election to recover back the property given in exchange, and the complainant, after that, could not revive the contract without the defendant's assent.

6. EXCEPTION TO MASTER'S REPORT—*decree in pursuance of, virtually overrules.* Where the master in chancery reported in favor of the relief sought by complainants, to which the defendant excepted, and the court decreed relief on the report as made: *Held*, that this was, in effect, an overruling of the exception.

7. CHANCERY—*practice as to hearing.* It is only where no replication is filed that the court is required to set a chancery cause for hearing. Where a replication is filed, the law sets the case for hearing without any order of the court.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. GAPEN & EWING, for the appellant.

Mr. JOHN E. POLLOCK, and Messrs. BLOOMFIELD & LOOMIS, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that Mrs. Coultas was the owner of a house and lot in the city of Bloomington, and appellant owner of a farm

in the county, and he and her husband, Thomas Coultas, agreed to exchange the same, Mrs. Coultas to give, in addition to the house and lot, a half section of land in Butler county, in the State of Kansas. The farm was subject to a mortgage of $2500, which appellees were to pay and discharge, and to pay appellant $700, as the difference between the house and lot and Kansas lands, and the farm. The house and lot was conveyed to appellant, and a bond was given for the conveyance of the Kansas lands by the 1st of September, 1873, and appellant was to pay a mortgage of $1200 on the house, and Mrs. Coultas was to pay $3200 to appellant if she should be unable to convey the Kansas lands with good title.

The bill alleges that appellant was the owner of but five-sixths of the farm, and that he knew the fact, and that he fraudulently represented the title to the same as being perfect, and fraudulently represented that it was free from incumbrance except the $2500 mortgage, when he in fact knew that there were judgments against him to the amount of about $1300, which were liens on the farm. That conveyances were made, and appellant was let into possession of the house and lot, and appellant's tenant attorned to appellee, but it is charged that, being a brother of appellant, he was under his control.

Appellees gave the trust deed on the farm to secure the $700 they were to pay in money, and also a trust deed for $3200, to become binding in case title could not be conveyed to the Kansas lands by the first of September following, as agreed by appellees. This, with the contract, was left with one Spaulding, to carry the agreement into effect. They also made another trust deed of $3500 on the farm, as is claimed, to raise the money to pay off the $2500 and the $700 mortgage. The application was made to Weed, who held the $2500 mortgage, but the loan was not consummated. Some time in July, 1873, Howell, who was an heir to a former owner of the land, and owned an undivided one-sixth of the

farm, came of age, and held his interest at $1300, thus making the incumbrances on the farm somewhere near $2600 more than the mortgage which appellees had agreed to pay. The original bill was at once filed, signed by Mrs. Coultas, and sworn to by her husband. Afterwards, appellees' counsel, in September, after the bill was filed, were allowed, for the first time after their execution, to see the contract and trust deed given to secure the Kansas land, and thereupon they applied to the court for leave on affidavit to file an amended bill, and were relieved from certain specified allegations made in the original bill.

The court, on its own motion, ordered that the following questions be submitted to a jury for decision: *First.* Were complainants to pay any money to defendant over and above the mortgage? *Second.* Did Thomas Coultas know of the interest held by Howell as heir, when the contract was made? *Third.* Did Mrs. Coultas know of that fact when the contract was entered into by the parties? The jury, after hearing the evidence, answered each interrogatory in the negative.

It is first objected, that the court below erred in relieving complainants from the allegations of their bill. The order, of course, must be construed as being no broader than the application, which only asked to be relieved from those which related to a statement of the terms of the contract.

Whilst in applications for injunctions on sworn bills, or in fact in any case where a bill is sworn to, courts always act with great caution in permitting the complainant to amend and make repugnant allegations, and to prove the same, and have relief thereon, yet such a practice is always allowed, to prevent the failure of justice, where a proper case is shown. Where it is manifest the complainant is honestly mistaken as to facts charged in his bill, it may be allowed; and more readily where a bill is sworn to by an agent or attorney, than where it is sworn to by the complainant. It is not to be expected that a person, months after a contract is reduced to writing, can give accurately and in detail all of the terms of

an agreement. And where the inspection of an agreement can only be had under a rule of court, the practice should not be as rigid as where it is on record or may be inspected at pleasure. No reason is perceived why appellees did not have an equal right to inspect the agreement as appellant, or why the latter should be permitted to withhold the information in such a case to the injury of the opposite party.

After a careful inspection of the affidavit of Thomas Coultas, we are clearly of the opinion that there was no error in relieving appellees, and permitting them to strike out the allegations as to the terms of the contract, and filing an amended bill. Mrs. Coultas had the entire interest in the property in litigation, and she should not be compelled to lose her rights thereto, simply because her husband, acting as her agent, could not accurately remember the terms of the agreement.

Only so much of the bill was stricken out as contained the allegations as to the terms of the agreement, and all else therein remained unaffected thereby. Hence the charge of fraud was unaffected by the amendment. And the jury have found that appellees had no knowledge of an outstanding title when they entered into the agreement, and the evidence justifies the conclusion that appellant knew that Howell owned one-sixth of the land, and that he concealed the fact from appellees until after he had consummated the sale, and for months afterwards. And the evidence justified the chancellor in finding that there were fraudulent representations in making the sale, and there is no evidence that appellees ever waived it, but on the contrary they promptly brought this suit on learning the fact.

It is urged that appellees having failed to convey the lands in Kansas, and not being able to convey them when the suit was brought, they were not in a position to rescind. Where one of the parties is guilty of fraud, the other may, without offering to perform his part of the contract, rescind. This is an elementary principle known to the entire profession. The fraud vitiates the contract, and the party on whom it was

32—76TH ILL.

perpetrated is not bound by his part of the agreement, and is not bound to offer to perform his part. It is only in cases free from fraud that a party must put the other in default by performing, or offering to perform, before he can rescind. Here, the fraud of appellant placed him in default, and released appellees from all obligation to proceed further under the contract. They were induced, by fraudulent representations, to receive a deed for land that was incumbered for $2600 above the price they were to pay. To compel them to go on, and convey land worth $3200, or pay that sum in money, and then pay off and remove incumbrances equal to $2600 in addition to the consideration they agreed to pay, would be inequitable in the extreme, and could never be sanctioned by a court of justice.

Nor does it matter that the judgments have been paid since the suit was commenced. When appellees filed their original bill, they thereby rescinded the contract, and elected to recover back their property, and to place appellant *in statu quo*, and from that time forward, appellant could do no act unassented to by appellees that would revive the contract or change the right of appellees to rescind. He, by his fault, placed it in the power of appellees to rescind, and he could not deprive them of that right.

It is also urged that appellees were to pay $1000 towards extinguishing Howell's title. The jury found that they had made no such agreement, and we think the evidence warrants the finding. But even if they had, they were absolved by the fraudulent representations that the farm was free from all but the $2500 incumbrance, when it was bound to the extent of Pusey's judgment of $800, and it may be by Baird and Tuttle's judgment for $500, recovered on the day the deed was executed, depending on when the deed was recorded. But we think the evidence warrants the finding that appellees did not agree to pay that sum.

It is urged that the court below did not overrule the exceptions to the master's report. We had supposed there could

be no more effectual mode of doing so than by decreeing the relief on the report as made by the master. We are not disposed to thwart justice by stickling for mere useless forms, but are inclined to look at substance without enforcing hypercritical objections, that can only produce delay and increase expense of litigation.

It is urged that the court erred in trying the case without setting it down for hearing. The 29th section of the chancery code provides that, on the filing of a replication, the cause shall be deemed at issue, and stand for hearing, but in default of replication the court may set the case for hearing on bill and answer. Replications were filed in this case, and the statute does not require that it should be set for trial. It stood for trial without any order therefor.

It is also said that it should have been tried in its order on the docket. We fail to find anything in the record to show it was not. The decree states that the case came on for hearing on the master's and receiver's reports and oral testimony introduced on the hearing. From this we can only conclude that the trial was in the regular and due course of the practice of the court. There is no force in these objections.

No error is perceived in the record, and the decree must be affirmed.                                *Decree affirmed.*