CLARA HALEY PATTERSON *et al.*

*v.*

AMANDA S. JOHNSON.

*Opinion filed February 21, 1905—Rehearing denied April 5, 1905.*

1. PLEADING—*when amendments are germane to bill.* A bill to enjoin the defendant from moving a building used as a blacksmith shop from one lot to another, as in violation of a certain section of a city ordinance, may properly be amended by setting up additional sections of the ordinance which it is alleged will be violated by moving the building.

2. SAME—*when allowing unsworn amendment to sworn bill is not reversible error.* Allowing an unsworn amendment to be made to a sworn bill is not reversible error, where the evidence in the record at the time the motion for leave to amend is made fully supports the amendment.

3. SAME—*when objection that decree was prematurely entered cannot be made.* An objection that final decree was entered before the time had expired within which defendants were ruled to answer certain amendments to the bill cannot be urged on appeal, where defendants moved to vacate the rule to answer, which was denied, and no objection was made in the trial court that the decree was prematurely entered.

4. MUNICIPAL CORPORATIONS—*right of city to regulate the construction or removal of wooden buildings.* The power of a city to regulate the removal or construction of wooden buildings anywhere within the corporate limits of the city, even though not within the "fire limits," is implied as incident to its power to declare what shall be considered nuisances and to abate and remove the same.

5. SAME—*ordinance construed as to meaning of word "block."* The word "block," used in an ordinance making it unlawful to locate or maintain on any street in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building for a blacksmith shop without the written consent of a majority of the property owners, will be construed to mean "street," where the ordinance provides that in determining whether two-thirds of the buildings on both sides of the street are used for residence purposes any building fronting upon another street and located on a corner lot shall not be considered. (*Harrison v. People,* 195 Ill. 466, distinguished.)

6. INJUNCTION—*what a sufficient showing of irreparable damage.* A permanent injunction restraining the moving of a wooden

214—31

building to a lot next to complainant's, in violation of a city ordinance, is authorized by findings in the decree that the removal will injuriously affect the property of the complainant, expose her building to greater danger from fire, increase her insurance and depreciate the market and rental value of her property

7. APPEALS AND ERRORS—*when findings of decree will be supported by reasonable intendment.* In the apparent absence of a complete record the findings of the chancellor incorporated in the decree will be supported by every reasonable intendment, and it will be presumed that the portions of the record omitted would, if incorporated in the record, sustain the findings of the decree.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This was a bill in chancery filed in the superior court of Cook county by the appellee, against the appellants, to enjoin the appellants from removing a wooden building used as a blacksmith shop from lot 2 to lot 6 in James F. Haley's subdivision of lot 2 of assessor's division of the north-west quarter of the south-east quarter of section 20, town 40, range 14, east, in the city of Chicago, county of Cook and State of Illinois.

The block in which said lots are situated is triangular in form, and is bounded by Clark street, Sheffield avenue and Addison street, and the appellee is the owner of lots 7, 8, 35, and 36 in said block, lots 7 and 8 having a frontage of fifty feet on Sheffield avenue and lots 35 and 36 a frontage of fifty feet on Clark street, upon each of which frontages, at the time of the filing of the bill, appellee was erecting a six-flat stone apartment building with modern improvements, which would be completed and ready for occupancy by June 15, 1902. Lot 6 adjoins lots 7 and 36 upon the south, and is one hundred and twenty-five feet long and has a frontage of twenty-five feet on both Clark street and Sheffield avenue. The bill averred that lots 2, 3, 4 and 5 belong to appellant

Patterson and lot 6 to appellant Nelson; that said building is seventy-five feet long, twenty-five feet wide and twenty-two feet high; that it has been standing fifteen years, is old and dilapidated, is constructed wholly of conbustible material and is of little value, and has depreciated more than fifty per cent of its original cost by means of wear and tear and from the effect of the elements or otherwise; that its removal to lot 6 will depreciate the value of appellee's property, expose her buildings to increased danger from fire, increase the rate of insurance thereon and lessen their rental value; and set up section 51 of an ordinance of the city of Chicago passed March 28, 1898, and then in force, which provides that before proceeding with the removal of a frame building a permit must be first obtained by the owner or his agent, upon written application, from the commissioner of buildings of the city, and that such permit shall be granted if said building has not been damaged to an extent greater than fifty per cent of its original value by fire, wear, tear and the action of the elements, or otherwise, provided the applicant first obtain the written assent to such removal by the persons owning a majority of front feet of lots in the same block in which it is proposed to locate said building, also the assent of a majority of persons owning front feet opposite the proposed location and within one hundred and fifty feet of the same, which ordinance it was provided should not apply to "any person removing a building upon his own premises and not upon the premises of any other person, or upon any street, alley or other public place, in making such removal." It was also averred that on May 15, 1902, one Sheeler filed with the commissioner an application for a permit to remove said building; that said application was not signed by Patterson or Nelson or their agents and did not state fully and clearly the work contemplated to be done thereon, and that said application was not assented to by a majority of the persons owning frontage of lots in the same block in which it was proposed to locate said building and a majority of persons

owning frontage opposite said proposed location and within one hundred and fifty feet of the same, and that the commissioner was without power or authority to grant a permit to remove said building to appellants or their agents, and that the appellants had no right to remove said building.

The appellant Nelson disclaimed any interest in said lot 6, and the appellant Patterson filed an answer, in which she averred she was the owner of lots 2, 3, 4, 5 and 6, in said block. Thereupon the appellee, by leave of court, amended her bill by setting up sections 57 and 58 of said ordinance. Section 57 provides that it shall not be lawful to repair, reconstruct or remove any frame building which has been injured more than fifty per cent of its original value by wear and tear, by the effect of the elements or by fire, and section 58 provides that a frame building shall not be erected nearer than one foot to any line of the lot upon which it is built, street and alley lines excepted. On the same day the appellee, without ruling the appellants to answer the said amendment, filed a replication, and thereupon the case was referred to the master to take proofs and report his conclusions. After the proofs had been closed, the appellee, by leave of court, again amended her bill, which amendment was unsworn to, by setting up section 49 of an ordinance of said city, as amended January 27, 1902, which is as follows: "It shall not be lawful for any person, firm or corporation to locate, build, construct or maintain on any street or alley * * * in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building for a * * * blacksmith shop * * * without the written consent of a majority of the property owners, according to frontage, on both sides of such street or alley. Such written consent shall be obtained and filed with the commissioner of buildings before a permit is issued for the construction or keeping of such building, provided that in determining whether two-thirds of the buildings on both sides of the street are used exclusively for residence pur-

poses, any building fronting upon another street and located upon a corner lot shall not be considered," and averred that said frame building was used exclusively as a blacksmith shop and would continue to be used as such. This amendment was not answered, but the master thereafter prepared his report finding the issues in favor of the appellants, and recommended that the bill be dismissed for want of equity. The master overruled objections to his report, which were renewed by way of exceptions and sustained by the court, and a decree was entered in favor of appellee in accordance with the prayer of her bill as amended, which decree was affirmed by the Appellate Court for the First District, and an appeal has been prosecuted to this court.

BOLEN & STEWART, for appellants.

M. G. GILBERT, and O. J. C. WRAY, (A. M. PENCE, of counsel,) for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that the court erred in permitting the appellee to amend her bill by incorporating therein sections 57, 58 and 49 of certain ordinances of the city of Chicago, on the ground that said amendments are inconsistent with and repugnant to the bill as originally filed. We do not agree with this contention. The bill was filed to restrain the appellants from placing said frame blacksmith shop on lot 6, as it was claimed to remove the same from lot 2 to lot 6 would be in violation of an ordinance of the city of Chicago, and section 51 of an ordinance passed March 28, 1898, was pointed out as the section which would be violated. After the answers of appellants came in and it appeared lot 6 belonged to Patterson, who was also the owner of lots 2, 3, 4 and 5, and that a permit was not necessary from the commissioner of buildings, under said section 51, for Patterson to remove the building, as in removing it she would not pass over any land

other than her own or over any public street, alley or public place, the appellee amended her bill by pointing out therein that the building was being removed in violation of sections 57 and 58 of said ordinance and section 49 of an ordinance as amended January 27, 1902. The object of the bill and the basis of the relief sought thereby were the same after the amendment as before,—that is, that the building was being removed in violation of certain sections of the ordinances of the city of Chicago. We do not think the amended bill set up a new cause of action, or that the grounds of relief relied upon in the amended bill were different from or inconsistent with the grounds relied upon in the original bill. In *Bauer Grocer Co.* v. *Zelle,* 172 Ill. 407, on page 412, it was said: "The subject matter of the amended bill and the relief sought thereunder were germane to the original bill, and the evidence before the court disclosed the necessity and propriety of amending and broadening the pleadings. It was clearly within the discretion of the chancellor to allow the amended bill to be filed." In *Papin* v. *Goodrich,* 103 Ill. 86, the bill as filed prayed for a specific performance of the contract, but by a subsequent amendment, made by leave of court, the prayer was changed to that of cancellation of the contract. On page 94 it was said: "We do not see why * * * the amendment was not properly allowed. The defendants had no vested rights in the phraseology or form of the bill."

It is also urged that it was error to permit the last amendment setting up section 49 of the ordinance, as the amendment was not sworn to. It has been held it is proper to allow amendments to a sworn bill where such course tends to prevent a failure of justice. (*Thomas* v. *Coultas,* 76 Ill. 493.) The ordinance had been admitted in evidence before the master, without objection, prior to the time the amendment was made and fully supported the motion to amend, and the amendment was made that the allegations of the bill might correspond with the proofs. While a proper practice would

have required the amendment to have been sworn to, it was not reversible error to permit the bill to be amended without the amendment being sworn to, in view of the condition of the record at the time the amendment was made.

In *Bauer Grocer Co.* v. *Zelle, supra,* on page 412, it was said: "The evidence already before the court was sufficient to support the motion for leave to make the proposed amendment, and it was therefore not necessary that the rule announced in *Jones* v. *Kennicott,* 83 Ill. 484, that the proposed amendment to a sworn bill should be first submitted to the court in writing, verified by affidavit, should have been enforced."

In *Hawkins* v. *Hunt,* 14 Ill. 42, on page 44, the court said: "It was suggested on the argument that the bill was not sworn to, and that therefore the complainant was not entitled to an injunction to prevent a transfer of the note. He may not have entitled himself to an injunction, in the first instance, on filing his bill without having sworn to it; but if upon a final hearing the case shows that he is entitled to an injunction to prevent a transfer of the note, or to a decree requiring it to be surrendered up and canceled, or to any other relief, the court will not refuse to grant it because the bill was not sworn to."

In *Booth* v. *Wiley,* 102 Ill. 84, after the evidence was all in the complainant was allowed, over the objection of the defendant, to amend his bill. No affidavit was filed in support of the motion. On page 99 the court said: "This is clearly no ground of error. The court is specially invested with power, by statute, to allow amendments to be made to bills, pleas, answers and replications, on such terms as it may deem proper. (Chap. 22, Rev. Stat. 1874, title 'Chancery,' sec. 37.) In *Jefferson County* v. *Ferguson,* 13 Ill. 33, four amendments were allowed to the bill, two of which were after the case had been argued and while it was under advisement in the circuit court, and it was held this was not error but that it was within the discretion of the court. In *Mason*

v. *Bair,* 33 Ill. 194, it was held not to be error to allow the bill to be amended after replication filed and the cause submitted upon the evidence; and in *Marble* v. *Bonhotel,* 35 Ill. 240, the complainant was allowed to amend his bill after answer filed, proofs taken and a motion made to dissolve the injunction, and it was held not to be erroneous. The principle that such amendments are purely discretionary, and ordinarily and in the absence of evidence of an abuse of a reasonable discretion not the subject of review, is too well settled to justify argument or extended comment."

After the master's report was filed the appellants were ruled to answer said amendments, and before the time to answer, as fixed by the rule, had expired a final decree was entered, and the decree is said for that reason to have been prematurely entered. After the rule was entered the appellants moved to vacate the same, which motion was denied, whereupon a decree was entered. No objection was made to the entry of the decree at the time it was entered because the rule to plead had not expired, and no motion was made to vacate the decree after it was entered on the ground it was prematurely entered. The objection cannot be made in this court for the first time.

It is next contended that sections 57 and 58 are unconstitutional and void. While no express power has been pointed out authorizing municipalities organized under the City and Village act to pass ordinances regulating the construction or removal of wooden buildings within their corporate limits outside the "fire limits," the city council or board of trustees of a city or village organized under that act has the power to declare what shall be considered nuisances and to abate and remove the same, and to regulate the police of the town, and we think the power to regulate the construction or removal of wooden buildings anywhere within the corporate limits of such municipalities is clearly implied as incident to those powers, although such powers are conferred upon such municipalities only in general terms.

In *Chicago, Burlington and Quincy Railroad Co.* v. *Haggerty*, 67 Ill. 113, on page 115, the court said: "There is no grant of power to this town, in express terms, to regulate the rate of speed of railway trains passing through the town, but by its charter (Private Laws of 1857, pp. 540, 541,) the board of trustees of the town have the power to declare what shall be considered as nuisances and to prevent and remove the same, and to regulate the police of the town, and to make such ordinances as the good of the inhabitants of the town may require. Under these powers we think the town possessed the authority so to order the use of private property within its limits as to prevent its proving dangerous to the safety of the persons and property of citizens; and we view the ordinance in question as but a police regulation for the preservation of the safety of persons and property, the adoption of which was no more than a fair exercise of the police power vested in the town."

In *King* v. *Davenport*, 98 Ill. 305, on page 310, in discussing the power of cities and villages to declare what shall constitute a nuisance and to order the summary abatement thereof, the court said: "The inquiry then must be whether the enactment of such a law is within the competency of legislative power. Unwholesome trades, slaughter-houses, operations offensive to the senses, the deposit of powder, the application of steam power to propel cars, the building with combustible materials and the burial of the dead may all, says Chancellor Kent, be interdicted by law in the midst of dense masses of population, on the general and rational principle that every person ought so to use his property as not to injure his neighbors, and that private interests must be made subservient to the general interests of the community. (2 Kent's Com. 340.) The right to restrain owners of land in towns from erecting wooden buildings, except under certain restrictions, has never been doubted, or if it has been, the doubt has long since been removed. (*Commonwealth* v. *Tewksbury*, 11 Metc. 58.) Such regulation is but 'a just re-

straint of an injurious use of property, which the legislature have authority to make.' "

In *Wadleigh* v. *Gilman,* 12 Me. 405, it is said: "Police regulation may forbid such a use and such modification of private property as would prove injurious to the citizens generally. This is one of the benefits which we derive from associating in communities. It may sometimes occasion an inconvenience to an individual, but he has a compensation in participating in the general advantage. Laws of this character are unquestionably within the scope of the legislative power without impairing any constitutional provisions. It does not appropriate private property to public uses, but merely regulates its enjoyment. In *Vanderlett* v. *Adams,* 7 Cow. 349, and the cases cited in the argument, this doctrine is fully sustained by the court. In the first of these cases, Woodworth, J., illustrates the efficacy and necessity of this power in cities by their right, which he considered as uniformly conceded, to make regulations the object of which is security against fire. When the owner of a city lot intends to build of wood he holds it clearly within the competency of the constituted authorities to say to him: 'You must not exercise that right; it is dangerous to all; you may build of brick or stone,' because the safety of all, in this, will be promoted."

In *Baumgartner* v. *Hasty,* 100 Ind. 575, it was held (p. 576): "A wooden building is not in itself a nuisance, but when erected in a place prohibited by law and where it endangers the safety of adjoining property it may become a nuisance. If the locality and character of such a building do endanger the safety of surrounding buildings then it may be treated as a nuisance, and a governmental body having authority to legislate upon such subjects may prohibit its erection in places where it would endanger the safety of surrounding property. There are many things that are not nuisances *per se,* but which become such when placed in locations forbidden by law and where they essentially interfere with the enjoyment of life or property."

The author of Wood's Law of Nuisance, in section 109, in discussing the right of cities and villages to regulate the construction of buildings within their corporate limits, says: "While a man has a right to follow his own tastes and inclinations as to the style and character of the building that he will erect upon his own land, yet he has no right to erect and maintain there a building that is dangerous by reason of the materials used in or the manner of its construction, or that is inherently weak or in a ruinous condition and liable to fall and do injury to an adjoining owner or the public. Such a building on a public street is a public nuisance, and is a private nuisance to those owning property adjoining it."

We do not deem the validity of section 58 of the ordinance necessarily involved in this case. The validity thereof, therefore, need not be considered.

The chancellor found said blacksmith shop to be "a one-story frame building; that its roof is made of wooden shingles; that the entire structure is made of wood; that the same is old and dilapidated; that the same is made of highly combustible material; that the same is of little value; that the same originally cost about $550 to build, erect and construct, together with the materials used in same; that the same has been damaged and injured to an extent greater than fifty per cent by wear and tear and the action of the elements or otherwise." The evidence as to the condition of said building is conflicting. We think, however, the findings of fact as recited in the decree are supported by the greater weight of the evidence, and we are not for that reason disposed to overrule the findings of the trial court as approved by the Appellate Court.

It is also contended that the trial and Appellate Courts erred in holding that as it appeared from the evidence that two-thirds of the buildings on both sides of Sheffield avenue, upon which avenue said blacksmith shop would have a frontage after its removal from lot 2 to lot 6, were used exclusively for residence purposes, the appellants could not move said

blacksmith shop upon lot 6 without the consent of a majority of the property owners upon both sides of said Sheffield avenue in the block in which said lot 6 is situated, even though two-thirds of the buildings upon the other streets surrounding said block were used for business purposes, and reliance is placed by appellants to sustain such contention upon the holding of this court in *Harrison* v. *People,* 195 Ill. 466. In that case the word "block," used in the ordinance then under consideration, was held to mean "a square." The word "block" may mean "a square," or it may mean "the part of a street which lies between two cross-streets." Were it not for the proviso found in section 49, "that in determining whether two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building fronting upon another street and located upon a corner lot shall not be considered," we would be disposed to place the same construction upon the word "block" found in section 49 as was placed upon the word "block" in the ordinance construed in the *Harrison case;* but in the construction of said section 49 it is our duty to give all parts of the section, including the proviso, full force and effect, and we are of the opinion said proviso limits the word "block," as found in said section, to the street or avenue upon which said blacksmith shop will front after it is removed,—that is, to Sheffield avenue between Newport avenue and Addison street.

It is also contended that there is no proof that appellee will suffer irreparable damages by reason of the removal of said blacksmith shop to lot 6. The court found that the removal of the shop to lot 6 would injuriously affect the property of appellee, expose her buildings to greater danger from fire, increase the rate of insurance thereon about ten per cent, depreciate their market value about ten per cent and lessen their rental value about ten per cent. These findings are similar to the findings in the case of *Griswold* v. *Brega,* 160 Ill. 490. In that case the findings of fact were held to be sufficient to authorize a perpetual injunction to issue at the

suit of a property owner to restrain the removal of a wooden building in violation of a city ordinance. We see no reason for departing in this case from the doctrine recognized in that case.

The chancellor made and incorporated in the decree the following findings of fact: "That on or about August 30, 1902, and while the injunction was still in effect, Theron H. Beckwith and R. Zimmerman, acting as agents of Clara Haley Patterson, caused divers persons to assemble in and about the frame building situated on lot 2 aforesaid, and then and there proceeded, with divers persons and divers implements and machinery, to remove the frame building so situated on lot 2 over and across lots 3, 4 and 5, and then and there placed said frame building to, upon and on lot 6 aforesaid; that said removal was done on behalf of the defendants, Patterson and Nelson; that Axel Nelson has maintained, operated and conducted a blacksmith shop in the frame building formerly located on lot 2, and now located on lot 6 aforesaid, since the removal thereof; that the same is conducted, operated and maintained with the full knowledge and acquiescence of defendant Patterson;" and the court, in pursuance of such finding, "ordered, adjudged and decreed that defendants Patterson and Nelson be and they are hereby directed and commanded to remove the frame building now located on said lot 6, within fifteen days from this date, from lot 6 aforesaid, and that on the failure of said defendants, or either of them, to remove the frame building now located on lot 6, then the complainant may apply to this court for such further order in the premises as may be necessary." It appears from the record that the question of the removal of said building was investigated by the court upon the petition of the appellee. In that proceeding answers were filed by Patterson, Nelson and Beckwith and replies made to interrogatories propounded to them, and the above findings of fact and the order of the court were the results of such investigation. As made up, certain portions of the rec-

ord made at that time appear to be omitted from the transcript of the record filed in this court. In the absence of a complete record the findings of the chancellor incorporated in the decree will be supported by every reasonable presumption and intendment, and it will be presumed, in support of the decree, that the portions of the record omitted, if incorporated in the transcript filed here, would sustain the findings found in the decree. *Culver* v. *Schroth,* 153 Ill. 437.

Finding no reversible error in this record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*