THE CITY OF CHICAGO, Plaintiff in Error, *vs.* ALBERT
SHAYNIN, Defendant in Error.

*Opinion filed February 20, 1913—Rehearing denied April 3, 1913.*

1. MUNICIPAL CORPORATIONS—*a city has power to prohibit con-
ducting of museum of anatomy.* Under clause 75 of section 1 of
article 5 of the Cities and Villages act, authorizing a city to de-
clare what shall be a nuisance and abate the same, a city has power
to prohibit the conducting of a museum of anatomy, even though
it is operated in connection with a place where medical treatment
is offered for profit.

2. SAME—*business conducted indecently may be prohibited un-
der police power of a city.* A city has power, under clause 66 of
section 1 of article 5 of the Cities and Villages act, to prohibit the
conduct of a business in a manner which is indecent and against
good morals.

3. SAME—*when city's determination that a thing is a nuisance
is final.* Even though it may be doubtful whether an exhibition or
business tends to immorality and there may be an honest difference
of opinion as to whether such exhibition or business should be
suppressed, the declaration of the city that it is a nuisance is final.

4. CONSTITUTIONAL LAW—*ordinance tending to preserve public
morals is constitutional.* An ordinance prohibiting an exhibition
or business which is against decency and good morals is not in
violation of section 1 of article 2 of our constitution nor of sec-
tion 1 of the fourteenth amendment to the Federal constitution.

WRIT OF ERROR to the Municipal Court of Chicago;
the Hon. HENRY C. BEITLER, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, (LEON
HORNSTEIN, of counsel,) for plaintiff in error.

JOHN A. SWANSON, AARON HEIMS, and DANIEL
BYRNES, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a *quasi* criminal proceeding brought against de-
fendant in error for violation of an ordinance of the city
of Chicago passed February 19, 1912, prohibiting the con-

ducting or operating of any exhibition commonly known as a museum of anatomy. Jury was waived and the cause was submitted to the court. After hearing, the court held the ordinance invalid and discharged defendant in error. Thereupon the trial judge certified that the validity of a municipal ordinance was involved, and that in his opinion the public interest required that the case should be brought directly to this court.

Section 1 of this ordinance, which is the only one necessary to be considered, reads as follows: "It shall be unlawful for any person, firm or corporation to own, conduct or operate any exhibition commonly known as a museum of anatomy, or other exhibition, show or place of amusement which is open to the general public, whether admission thereto is restricted by sex and age or not, or whether a fee for admission thereto is charged or not, wherein the principal part of the exhibition is illustrative of the human anatomy, or wherein are exhibited any books, pamphlets, circulars, pictures, charts, diagrams, models, casts or other articles, paintings, drawings or designs of any kind illustrating or describing the genital organs, or containing any other obscene, lewd, indecent or immoral exhibition of any kind, when such museum or other exhibition is conducted for gain or profit, either directly or indirectly, or for the purpose of advertising or in connection with a place where medical treatment is offered or medicine is sold, or for any immoral purpose whatever."

From the record it appears that the defendant in error was manager of a free museum of anatomy in Chicago at the time of his arrest; that the place contained models showing various diseases at different stages, such as syphilis, gonorrhea, leprosy and gleet; that the principal feature of the exhibition was illustrative of the human anatomy; that there was a sign in front stating that no one under twenty-one would be admitted and that no women or children were allowed in the place; that it was conducted in

connection with a place where medical treatment was offered for gain or profit.

The principal question argued is, whether under the Cities and Villages act the city of Chicago was authorized to pass an ordinance of this character. Counsel for plaintiff in error insist that such authority exists under clause 41 of section 1 of article 5 of that act, which provides, among other things, for licensing, taxing, regulating, suppressing and prohibiting "theatricals and other exhibitions, shows and amusements," etc.; also under clause 45 of the same section, which authorizes the city council to suppress bawdy and disorderly houses, "and to prohibit the sale or exhibition of obscene or immoral publications, prints, pictures or illustrations;" also under clause 66 of the same section, which authorizes the city authorities to pass and enforce all necessary police ordinances; and also under clause 75 of the same section, which authorizes the city authorities to declare what shall be a nuisance, abate the same, etc. In view of the conclusions we have reached with reference to said clauses 66 and 75 we do not find it necessary to consider clauses 41 and 45.

A public nuisance has been defined as "a violation of a public right, either by a direct encroachment upon public rights or property, or by doing some act which tends to a common injury, or by omitting to do some act which the common good requires and which it is the duty of a person to do, and the omission to do which results injuriously to the public." (1 Wood on Nuisances,—3d ed.—sec. 17; 21 Am. & Eng. Ency. of Law,—2d ed.—683; 29 Cyc. 1152.) This court has said that the power of the city authorities, under said clause 75 of the Cities and Villages act, to declare what shall be a nuisance is not an arbitrary one. In *Laugel* v. *City of Bushnell,* 197 Ill. 20, this court said (p. 26): "Nuisances may be thus classified: First, those which in their nature are nuisances *per se* or are so denounced by the common law or by statute; second, those

which in their nature are not nuisances but may become so by reason of their locality, surroundings or the manner in which they may be conducted, managed, etc.; third, those which in their nature may be nuisances but as to which there may be honest differences of opinion in impartial minds." To the same effect is *Sings* v. *City of Joliet,* 237 Ill. 300.

It is insisted by defendant in error that the city council cannot say that an exhibition or show of the character indicated by the evidence in this case is injurious to the morals, health, good order or safety of the public, and that therefore this ordinance declaring such a place a nuisance is arbitrary and unreasonable. Public nuisances, strictly speaking, are such as result from the violation of public rights. Of this class are those intangible injuries that result from the immoral, indecent and unlawful acts of parties that become nuisances by reason of their deleterious influence upon the morals or well being of society. (1 Wood on Nuisances,—3d ed.—sec. 14.) To this class belong those nuisances the existence of which only needs to be proved in any locality, whether near or far removed from cities, towns or human habitations. "A public exhibition of any kind that tends to the corruption of morals, to a disturbance of the peace or of the general good order and welfare of society is a public nuisance. Under this head are included * * * any and all exhibitions the natural tendency of which is to pander to vicious tastes and to draw together the vicious and disorderly members of society." (1 Wood on Nuisances,—3d ed.—sec. 68; *Commonwealth* v. *McGovern,* 75 S. W. Rep. (Ky.) 261; 6 Words and Phrases, 5799-5804; *Welch* v. *Stowell,* 2 Doug. 332.) The courts in more than one jurisdiction have held that the exhibition of a stallion on the public streets of a city or village may be declared by the city or village authorities a nuisance and punished as such. (2 Dillon on Mun. Corp.— 5th ed.—685; *State* v. *Iams,* 11 L. R. A. [N. S.] 736,

and cases cited in note.)    If it be argued that the cure of the sexual diseases portrayed by these models is not an unworthy object,—just as the breeding of good horses is not objectionable,—it may be answered that the exhibition of offensive and repulsive models on sexual subjects, which may pander to the morbid tastes and arouse the sexual desires of those who are attracted to the place, does not have any necessary relation to the unobjectionable results. When any business for treating sexual diseases is carried on with such objectionable features as, it must be, to violate the provisions of this ordinance, then such objectionable features may so far overcome the legitimate value of such business as to warrant suppression.    In the *Laugel case, supra,* it was held that the power granted by said clause 75 to the governing bodies of municipal corporations to declare what shall be nuisances and to abate the same, authorizes such bodies to conclusively denounce those things falling within the first and third classes to be nuisances, but as to those falling within the second class the power possessed is only to declare such of them to be nuisances which are, in fact, so.    In *North Chicago City Railway Co.* v. *Town of Lake View,* 105 Ill. 207, it was held that if it be doubtful whether a thing is, in fact, a nuisance, the determination of the question requiring judgment and discretion on the part of the village authorities in exercising their legislative functions under the power delegated by this clause of the Cities and Villages act, the action of such village authorities would be deemed conclusive of the question.    To the same effect are *Harmison* v. *City of Lewistown,* 153 Ill. 313, and *Laugel* v. *City of Bushnell, supra.*

Even though there might be a doubt whether the kind of exhibition or business conducted in the place kept by defendant in error tends to immorality and there might be an honest difference of opinion as to whether it was advisable to suppress such business as a nuisance, there can be no question as to the right of the city council to exercise its

discretion and declare, by ordinance, such places common nuisances. On the facts in this case we deem such a declaration by the council conclusive on the courts. We are disposed to think, also, that if this business was against decency or public morals the ordinance could be upheld under clause 66, granting to municipalities the authority to pass and enforce all necessary police ordinances. *Patterson* v. *Johnson,* 214 Ill. 481; *City of Chicago* v. *Gunning System,* 214 id. 628; *Gundling* v. *City of Chicago,* 176 id. 340; *Spiegler* v. *City of Chicago,* 216 id. 114; *McPherson* v. *Village of Chebanse,* 114 id. 46; *Wice* v. *Chicago and Northwestern Railway Co.* 193 id. 351; *City of Chicago* v. *Phœnix Ins. Co.* 126 id. 276; *City of Chicago* v. *Bowman Dairy Co.* 234 id. 294; *Ritchie & Co.* v. *Wayman,* 244 id. 509.

Counsel for defendant in error further insist that the ordinance and said clauses 66 and 75 (if they authorize its passage) are unconstitutional and void, as contravening section 1 of article 2 of the constitution of the State and section 1 of the fourteenth amendment of the United States constitution. Charters authorizing municipalities to tax, restrain or prohibit shows, exhibitions or places of amusement are usually held constitutional. (2 Dillon on Mun. Corp.—5th ed.—sec. 661.) In *Launder* v. *City of Chicago,* 111 Ill. 291, it was held that the city had authority to prohibit and suppress entirely the business of hawkers, peddlers and pawnbrokers. This court held in *Block* v. *City of Chicago,* 239 Ill. 251, that an ordinance which prohibited the exhibition of immoral or obscene pictures did not contravene any constitutional principles. If an ordinance tends to the preservation of the public health, morals, safety or welfare it is constitutional. (*People* v. *Steele,* 231 Ill. 340.) Under these authorities it must be held that the ordinance in question was a valid and constitutional exercise of the authority granted to the city of Chicago by the Cities and Villages act.

The judgment of the municipal court will be reversed and the cause remanded to that court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*