**Village of Gurnee, Plaintiff-Appellee, v. William Depke, Defendant-Appellant.**

**Gen. No. 69–26.**

Second District.

October 20, 1969.

Thomas P. Stepanich, of Waukegan, for appellant.

W. Howard Swanson, and J. Henderson, of Waukegan, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendant, William Depke, was charged with creating and maintaining a nuisance under an ordinance of the Village of Gurnee, which provided that it was unlawful for any person to cause, permit or maintain the existence of any nuisance on any property under his control, lease-

hold or ownership; and which further provided that the storing, keeping or maintaining outside of a closed building of any junk, parts, machinery, or equipment or motor vehicle not in operable condition, would be considered a nuisance unless the premises was a properly licensed junkyard.

On May 23, 1968, the defendant appeared pro se at the bench trial. After hearing the evidence, the magistrate found the defendant guilty of creating and maintaining a nuisance; gave him thirty days in which to remove junk parts, machinery or equipment not in an operable condition, from his premises, and continued the cause for judgment on June 27, 1968. On June 19, 1968, an attorney for the defendant filed a post-trial motion. The motion was heard and denied. On October 4, 1968, the court entered a further order giving the defendant "30 days in which to remove the items in question from his premises and to clear up the nuisance—If not removed fine of $500.00 plus costs to be paid November 4, 1968, at 3:30 o'clock P. M."

On November 26, 1968, the court entered a written order that judgment against the defendant in the amount of $500 be and remain in effect. This order recited: "That the defendant, after trial on May 23, 1968, was found guilty of 'Illegal parking and storage of motor vehicles.' " This recitation was erroneous in view of the docket order of May 23, 1968. Section 64.2 of the Civil Practice Act (Ill Rev Stats 1967, c 110, par 64.2), provides that no special findings are necessary in any case at law, tried without a jury, to support the judgment. Thus, the finding in the written order of November 26, 1968, as above set forth, is surplusage, and such misstatement of fact cannot alter the true facts of the case.

■■ Upon appeal, the defendant contends that the complaint is bad for duplicity in that it charges two offenses in one count. A question is thus posed as to whether this proceeding is sufficiently criminal in nature

164

that the charge of duplicity can be raised. See: City of Highland Park v. Curtis, 83 Ill App2d 218, 224, 226 NE2d 870 (1967). Regardless of this question, the charge of duplicity raises a defect as to the form of the complaint which the defendant did not challenge in the trial court by a timely pretrial motion. Had he done so, the defect, if any, might easily have been cured. A motion in arrest of judgment is used to reach defects which are fundamental in nature rather than those of form. See: Ill Rev Stats 1967, c 38, § 116–2. The alleged defect of duplicity is such that it could be, and was, waived by the defendant's failure to make a timely objection thereto. 41 Am Jur2d, Indictments and Informations, § 301, p 1067; People v. Brausam, 83 Ill App2d 354, 359, 360, 227 NE2d 533 (1967).

The defendant next contends that the Village of Gurnee cannot by ordinance declare the storage of nonoperable motor vehicles to be a nuisance unless the operation of his business is a nuisance in fact. In Laugel v. City of Bushnell, 197 Ill 20, 63 NE 1086 (1902)—an early, leading case—, at pages 26 and 27, the court stated:

> "Nuisances may thus be classified: First, those which in their nature are nuisances per se or are so denounced by the common law or by statute; second, those which in their nature are not nuisances but may become so by reason of their locality, surroundings or the manner in which they may be conducted, managed, etc.; third, those which in their nature may be nuisances, but as to which there may be honest differences of opinion in impartial minds.
>
> "The power granted by the statute to the governing bodies of municipal corporations to declare what shall be nuisances and to abate the same, etc., authorizes such bodies to conclusively denounce those things falling within the first and third of these classes to be nuisances, but as to those things falling

within the second class the power possessed is only to declare such of them to be nuisances as are in fact so."

■ In this case, witnesses for the Village testified that: (1), the grass in the area of the defendant's property had not been cut for a number of years; (2), smoke from burning tires and rubbish was seen coming from the defendant's premises at least once a week; (3), children going to a nearby school were attracted to the inoperable vehicles; and (4), one of the witnesses testified that she believed she had seen rats in the area, and another described the lot in question as a haven for rats. In the light of this testimony, the judgment of the magistrate finding the defendant guilty of creating and maintaining a nuisance was not against the manifest weight of the evidence. Payne v. Kingsley, 59 Ill App2d 245, 252, 253, 207 NE2d 177 (1965).

■ We believe that the Village had the power to prohibit the keeping, storing and maintaining, outside of a closed building, of junk, parts, machinery, or equipment or motor vehicles not in an operable condition, unless the premises was a properly licensed junkyard and complied with all of the ordinances of the Village governing such facilities. The unsightly nature of most junk, parts and machinery, or inoperable equipment and cars; the noxious odor from the burning of junk materials, which apparently took place; the attractiveness of such unkempt and weedy areas to rats and vermin are well known to all. It is for reasons such as these, that the operation of junkyards commonly is controlled by licensing provisions.

■ The storage of junk, parts, machinery and inoperable cars and equipment might, or might not, be terribly objectionable to persons with impartial minds. This operation appears to us to fall within the third category of

nuisances as set forth in Laugel, supra. The Village, thus, had the right to declare it a nuisance, particularly in view of the circumstances that the business operation was neither properly licensed nor in compliance with the Village ordinances governing junkyards. The determination of the legislative body of the Village is conclusive upon us. City of Chicago v. Shaynin, 258 Ill 69, 73, 101 NE 224 (1913); North Chicago City R. Co. v. Town of Lake View, 105 Ill 207, 212 (1883).

The defendant further contends that the plaintiff cannot by ordinance declare the storage of inoperable motor vehicles to be a nuisance unless its ordinance conforms strictly to the requirements of state enabling legislation. He cites Ill Rev Stats 1967, c 24, § 11-40-3, which provides:

> "The corporate authorities of each municipality may by ordinance declare all inoperable motor vehicles, whether on public or private property, to be a nuisance and authorize fines to be levied for the failure of any person to obey a notice received from the municipality which states that such person is to dispose of any inoperable motor vehicles under his control. However, nothing in this Section shall apply to any motor vehicle that is kept within a building when not in use, to historic vehicles over 25 years of age, or to a motor vehicle on the premises of a place of business engaged in the wrecking or junking of motor vehicles.

> "As used in this Section, 'inoperable motor vehicle' means any motor vehicle from which, for a period of at least 6 months, the engine, wheels or other parts have been removed, or on which the engine, wheels or other parts have been altered, damaged or otherwise so treated that the vehicle is incapable of

being driven under its own motor power. 'Inoperable motor vehicle' shall not include a motor vehicle which has been rendered temporarily incapable of being driven under its own motor power in order to perform ordinary service or repair operations."

We cannot agree with the defendant's contention in this regard. It begs the true question; namely, can the Village by ordinance properly declare that it "shall be unlawful for any person to cause, permit or maintain the existence of any nuisance on any property under his control, lease or ownership" by the "storing, keeping, or maintaining outside of a closed building, any junk, parts, machinery or equipment not in an operable condition, or motor vehicle not in an operable condition, provided, however, that this Ordinance shall not apply to a properly licensed junkyard which is in full compliance with all of the Ordinances of the Village of Gurnee governing the same?"

Also, nothing in the statute indicates that by this enactment, the legislature intended to preempt this area and bar proper and authorized legislation by municipal bodies relating to nuisances in general. It appears that the ordinance of the Village of Gurnee was enacted under Ill Rev Stats 1967, c 24, § 11–60–2, which provides: "The corporate authorities of each municipality may define, prevent and abate nuisances."

We believe that the Village did have the power to pass the ordinance in question, and that it was applicable to the defendant in its operative effect.

Other matters are raised by the defendant, but we do not consider them material nor grounds for reversal. Thus, the judgment of the trial court is affirmed.

Judgment affirmed.

SEIDENFELD, J., concurs.

THOMAS J. MORAN, P. J., specially concurring:

The evidence in this cause disclosed that the defendant kept old farm equipment, dismantled machinery and other junk upon his premises. There was further testimony to the effect that, in addition to the above, the defendant also stored inoperative motor vehicles upon his premises. It is to this latter subject (inoperative motor vehicles) that I direct my opinion.

The majority view has decided that (1) the Village has the power to enact an ordinance prohibiting the storing, keeping or maintaining, outside of a closed building, any motor vehicle not in operable condition, (2) that the Legislature did not indicate or intend to preempt the area of "inoperative motor vehicles" when it enacted section 11–40–3 of the Municipal Code (quoted in the opinion) and (3) that the ordinance in question was enacted under section 11–60–2 (quoted in the opinion) rather than under section 11–40–3.

Section 11–60–2 became law on May 29, 1961, whereas section 11–40–3 became law on June 19, 1967. The latter section declared certain motor vehicles to be a nuisance and not only provided for a notice but defined what would constitute an inoperative motor vehicle. The Village, on September 18, 1967, enacted an ordinance which enumerated six conditions or acts that would constitute a nuisance. Included as one of the six was the following, under which the defendant was charged:

> "The storing, keeping, or maintaining outside of a closed building any junk, parts, machinery or equipment not in operable condition, *or motor vehicle not in operable condition,* provided, however, that this ordinance shall not apply to a properly licensed junkyard. . . ." (Emphasis added.)

As can be seen, the ordinance neither requires notice, nor defines what constitutes an inoperable motor vehicle as required in the statutory provision.

169

Prior to the enactment of section 11–40–3, an inoperative motor vehicle was not a nuisance per se. However, by enacting this section, the Legislature granted municipalities the right to declare all inoperative motor vehicles, whether on public or private property, to be a nuisance and to levy a fine in the event (1) that after notice a person fails to dispose of any such vehicle under his control and (2) the vehicle, for a period of six months, was incapable of being driven under its own power.

The majority opinion asserts that there is nothing in section 11–40–3 which indicates that the Legislature intended to preempt this area (inoperative motor vehicles) and bar proper and authorized legislation by municipal bodies relating to nuisances in general as expressed under section 11–60–2. I would agree if the section of the ordinance in question had not included inoperative motor vehicles or, having included the same, would have provided for a notice and defined what constituted an inoperative motor vehicle. However, the fact that the Legislature did act in this area bears out the conclusion that it was intended to preempt this specific field, otherwise there would be no reason for such legislation and it would become a useless act. We must keep in mind that the section is directed, expressly, to municipalities and not to other agencies of the State. It should be further noted that this section is not found under section 11–60–2 covering nuisances in general.

The majority, by assumption, concludes that the ordinance in question was enacted under section 11–60–2. There is nothing in the ordinance or the record before us upon which to base this assumption; rather, because of the time sequence between the enactment of section 11–40–3 and the later enactment of the ordinance, the assumption should be that the Village had the recent

170

enactment of the Legislature in mind when it adopted its ordinance.

There can be no question that the Village had the power to adopt an ordinance pertaining to inoperative motor vehicles. That is the purpose of section 11–40–3; however, the section requires certain minimum safeguards, i. e., notice, and a definition of inoperative motor vehicles. These minimum requirements were not included within the ordinance. As it stands, any resident of the Village may, under the present ordinance, (since it is styled in the disjunctive) be prosecuted for having an inoperative motor vehicle upon his premises, without being given notice and regardless of how long such vehicle may be present.

I therefore disagree with the majority view to the extent expressed herein, but agree that the judgment must be affirmed based upon the evidence introduced at the hearing, as it relates to old farm equipment, dismantled machinery and other junk.