## Lewis E. Stevens et al., Appellees, v. W. E. Morenous et al., Appellants.

1. NUISANCES—*what not.* Theatres conducted properly and so located as not seriously to annoy the neighborhood are not nuisances *per se* at common law, and only become nuisances when they are used for the exhibition of immoral and vicious plays or when they call together disorderly and vicious people.

2. INJUNCTIONS—*when restraining theatrical performance on Sunday erroneous.* *Held,* under the evidence, that it did not appear that the proposed play was improper or immoral and that the restraining of its production upon the Sabbath day was not justified either upon the ground that it was a nuisance or that it would disturb the public peace.

Bill in equity.  Appeal from the Circuit Court of Crawford county; the HON. ENOCH E. NEWLIN, Judge, presiding.  Heard in this court at the October term, 1911.  Reversed and remanded with directions. Opinion filed March 21, 1912.

PARKER & CROWLEY and PARKER & EAGLETON, for appellants.

M. E. COX, GEORGE W. JONES, BRADBURY & GAINES and J. A. MACHATTON, for appellees.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

Appellees, citizens and property owners residing in the city of Robinson, filed their bill in equity for an injunction against appellants in which it was charged that the Opera House was located in a populous portion of said city, and was used for public shows and entertainments; that it was under the control of appellant Morenous who had engaged with appellants Powell & Cohan Stock Company that the latter give, and that they intended to give a public show on the stage of said Opera House on the forthcoming Sunday, January 29; that said show was of a comic, frivolous and unsavory character, unfit for public exhibition on a Sunday; that it would disturb the peace and good order of society, was unfit to be seen or listened to by young men and women, and would debauch the public morals.  The bill prayed a writ of injunction restraining appellants from exhibiting the said show, or any other show or amusement which would disturb or tend to disturb, the peace and good order of society in said city.

A temporary writ of injunction was issued as prayed after which there was an amendment to the bill in which it was further charged that such exhibition would be a public and private nuisance, and would de-

preciate the value of the property of appellees and other citizens of said city. Answers being filed denying the material averments of the bill, the cause was heard by the chancellor upon the testimony of witnesses examined before him.

The court found the equities with appellees and found that if the show had been given on Sunday, January 29, it would have been a nuisance; would have caused great financial damage to complainants, and would have greatly depreciated the value of property in said city. The decree perpetually enjoined appellants from exhibiting said show on any Sunday within said city, or any other show or performance, on any Sunday in said city, which would create a nuisance or depreciate the value of complainants' property.

In turning to the transcript of the testimony contained in the record for evidence of the threatened nuisance it was alleged would result from the acts of appellants, we find that the city of Robinson was a progressive growing city in the oil regions, and contained about six thousand inhabitants; that it had an Opera House where exhibitions and shows were given for the amusement and diversion of such of the public as wished to patronize them; that appellant Morenous, who was the manager of the Opera House, gave out by advertisements that he would present to the public on Sunday evening January 29th, at the Opera House, a performance called "Yankee Doodle Boy" charged in the bill as being a frivolous and immoral show which would disturb the peace and good order of society and would debauch the public morals.

From the testimony of appellees' witnesses we are unable to find out anything whatever about the proposed performance, none of them ever having seen it. From the witnesses introduced by appellants, it appears the show had singing, dancing and chorus, singing of the latest popular songs, and described the

dresses of the females of the troupe as coming below the knees, the limbs being exposed to some extent above the ankles. All the witnesses who had seen the performance testified there was nothing obscene, vulgar or immoral about it. Theatres conducted properly and so located as not to seriously annoy the neighborhood are not nuisances *per se* at common law, and only become nuisances when they are used for the exhibition of immoral and vicious plays or when they call together disorderly and vicious people. Wood on Nuisances, Par. 52. There was no evidence in the case tending to show the play itself was of the character that could be termed a nuisance.

It is the contention of appellees that such performance on the Sabbath day if it depreciates the value of property in the city is a nuisance which a court of equity has power to restrain.

Secular amusements on the Sabbath day are not in themselves unlawful except the good order and peace of society are disturbed thereby. Hurd's Stat. Chap. 58, sec. 261; Eden v. The People, 161 Ill. 296.

Whether the peace and good order of society would have been disturbed by the intended performance of the "Yankee Doodle Boy" on Sunday evening is left in uncertainty as there was no performance.

If it can be said that the gathering of persons about the office and the sale of tickets on Sunday was a part of and connected with the show, there is some evidence of a gathering of persons there and that some of the witnesses regarded it as unseemly, and a desecration of the Sabbath day.

There was no gathering of noisy crowds; no disorder; no disturbance of the peace, and the only effect was that it was not agreeable to some of those who passed, and who disliked any secular amusements or occupations on the Sabbath day. This we think was not sufficient to show that the peace and good order

of society were disturbed, nor is the evidence sufficient to show that if the Sunday evening performance had taken place it would have been of such nature as to violate the statute.

Any sort of secular occupations and amusements on Sunday are offensive to many people who believe in "remembering the Sabbath day," and many people without religious scruples abstain from them out of respect for the feelings of those who object to them, but there are many others who devote the day to amusements and diversions. The law does not undertake to regulate them in this regard, but permits them the widest liberty in seeking their amusements and enjoying them, so long as they do not violate the law or offend against the peace and good order of society. We are of opinion the evidence was not sufficient to show that there was or would have been any violation of the statute.

Even if the evidence showed that the performance would be vicious and immoral or that there would be a violation of the statute the evidence in this record fails to show there would be any injury to property rights. If the mere speculative opinions of witnesses that property would be depreciated are of any value, the manifest weight of the evidence is there would be none. There was no evidence that any one left the city or would leave it on account of such a show on Sunday. There was no fact stated upon which to base any opinion that the price of property would be thereby depreciated.

It is a fundamental principle that the subject-matter of the jurisdiction of equity is the protection of private property and civil rights. Its courts will not punish or prevent criminal or immoral acts if they do not violate private rights, nor will they restrain the commission of crimes or enforce moral obligations or duties in the absence of injury to property rights. In all such cases there is an ample remedy at law and

courts of equity will not interfere. High on Injunctions, Par. 20; Cope v. Dist. Fair Assn., 99 Ill. 489; Harding v. Am. Glucose Co., 182 id. 551.

We are of opinion the evidence in the case furnished no ground for relief in a court of equity and the decree of the Circuit Court will be reversed and remanded with directions to dismiss the bill and dissolve the injunction.

*Reversed and remanded with directions.*