(No. 50506.-

THE CITY OF CHICAGO, Appellant, v. SALVATORE
CECOLA *et al.,* Appellees.

*Opinion filed March 14, 1979.—Rehearing denied May 30, 1979.*

424

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Mary Denise Cahill, of counsel), for appellant.

Patrick A. Tuite, of Chicago, for appellees.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, Salvatore Cecola, Juan Cruz, John Spadeas, Jeffrey C. Weiss and Norman McCray, doing business as Harem Leisure Spa, appealed from the order of the circuit court of Cook County permanently enjoining them from operating the business conducted at 839 North La Salle Street in Chicago. The appellate court reversed (56 Ill. App. 3d 143), and we allowed the city's petition for leave to appeal.

The parties have stipulated that there is an establishment known as the Harem Leisure Spa located at 839 North La Salle Street owned by defendant Salvatore Cecola; that on September 3, 1974, Helena Roberts, a female employee of the Harem Leisure Spa, committed an act of prostitution there by offering to perform an act of oral copulation for money with Investigator Nicholas Ahrens of the Chicago Police Department, and that on September 29, 1974, the said Helena Roberts was convicted of an act of prostitution based on that conduct; that

for money, in private cubicles, completely nude female employees of the Harem Leisure Spa on September 9, 1974, October 25, 1974, December 1, 1974, December 27, 1974, February 15, 1975, and on other occasions, had fondled and stroked the penises of investigators from the Chicago Police Department and customers of the Harem Leisure Spa; and that the foregoing conduct is a service offered by the Harem Leisure Spa to its customers upon payment of money.

The city alleged in its complaint that defendant Cecola was the owner of the Harem Leisure Spa, that defendants Cruz, Spadeas, Weiss and McCray were employed there; that the blatantly sexual conduct that occurred at defendants' "spa" was deleterious and a menace to the health, safety or general welfare of the community and constituted a public nuisance; that the plaintiff city had no adequate remedy at law as the numerous summonses issued to the defendants and the arrests of their employees had had no effect in eliminating or in any way retarding the illegal activity; and that the only remedy that would halt this activity would be a permanent injunction permanently and perpetually enjoining the defendants from operating their business. In their answer defendants pleaded as affirmative defenses that insofar as the municipal ordinance attempts to punish persons for being found in places where allegedly lewd activity is carried on, the ordinance violates the due process clause of the fourteenth amendment because the word "lewdness" is so vague that a reasonable person cannot be expected to conform his conduct to the requirements of the law and the court cannot be reasonably expected to interpret and apply the law; that the conduct of sexual stimulation of male genitals is an activity that is permitted by law and that is conducted in a private room out of sight of the general public and is in no way deleterious or a menace to the health, safety or

general welfare of the community; and that the plaintiff has an adequate remedy at law in the prosecution of the defendants under the ordinance which provides for a fine after conviction.

Section 192—1 of the Municipal Code of Chicago provides:

> "Every house of ill-fame or house of assignation where men and women resort for the purpose of fornication, prostitution, or lewdness is hereby declared to be a nuisance."

Pursuant to section 192—19 of the Municipal Code of Chicago, a fine of $5 to $200 may be imposed for a violation of a provision of chapter 192. Section 192—1 of the Municipal Code is similar to section 1 of "An Act regarding places used for purposes of lewdness, assignation, or prostitution ***" (the Act) (Ill. Rev. Stat. 1975, ch. 100½, par. 1), which in pertinent part provides:

> "That all buildings and apartments, and all places, and the fixtures and movable contents thereof, used for purposes of lewdness, assignation, or prostitution, are hereby declared to be public nuisances, and may be abated as hereinafter provided. The owners, agents, and occupants of any such building or apartment, or of any such place shall be deemed guilty of maintaining a public nuisance, and may be enjoined as hereinafter provided."

Section 2 of the Act (Ill. Rev. Stat. 1975, ch. 100½, par. 2) provides for injunctive relief perpetually enjoining all persons from maintaining or permitting the public nuisance to continue. Although this action was not brought pursuant to the Act, it is well settled that the statute was not intended to displace common law actions to abate public nuisances (*People ex rel. Dyer v. Clark* (1915), 268 Ill. 156); and under the common law, houses of prostitution were considered public nuisances (*People ex rel. Dyer v. Clark* (1915), 268 Ill. 156).

The defendants contend that in order to be considered a violation of the ordinance, and therefore a public

nuisance, their conduct must constitute an act of "prostitution." They argue, too, that the city council, in enacting the ordinance, intended that "prostitution" be defined, as in the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 11—14), to include only acts of sexual intercourse and deviate sexual conduct. We do not agree that such a narrow definition of "prostitution" was intended by the city council; nor is such an interpretation constitutionally required.

The activities of a house of prostitution involve commercial sexual acts of every sort. Clearly, a masturbatory massage parlor is engaged in commercial acts of sexual gratification involving the sex organs of one person and the hand of another. The definition contained in the Criminal Code defines the offense and does not purport to define or limit actions to enjoin a nuisance. It is axiomatic that not all forms of nuisances can be equated with criminal behavior; nor does it necessarily follow that all criminal acts constitute nuisances. In our opinion defendants' activities fall clearly within the definition of prostitution and the ambit of the ordinance, and as such constitute a public nuisance, in terms of both the ordinance and section 1 of the Act (Ill. Rev. Stat. 1975, ch. 100½, par. 1). Because we hold that the activities in question involve a form of prostitution we need not discuss defendants' contention that the term "lewdness," contained in the ordinance, must be defined in the same manner as the term "prostitution" and may not independently encompass other types of conduct.

Defendants next contend that the city's action in equity would not lie for the reason that there was an adequate remedy at law because the conduct proscribed by the ordinance had been held to be obscene (see *People v. Taylor* (1976), 35 Ill. App. 3d 418) and there could now be a prosecution under the ordinance. Equity has historically enjoined nuisances, and as the court said in *Stead v.*

*Fortner* (1912), 255 Ill. 468, 476: "As to nuisances generally, not only is the existence of the method provided by the statute for their abatement not an obstacle to relief in a court of equity, but this court, in *Minke v. Hopeman,* 87 Ill. 450, held that the trial and acquittal of one indicted for a nuisance did not deprive a court of equity of its equitable jurisdiction, and it was said that the fact that the statute gave a remedy by indictment did not deprive the court of jurisdiction to enjoin the nuisance." This court has consistently held that a criminal prosecution, which cannot prevent the continuance of a nuisance, is not a complete and adequate remedy for a wrong inflicted on the People. (See *People ex rel. Dyer v. Clark* (1915), 268 Ill. 156; *People ex rel. Kerner v. Huls* (1934), 355 Ill. 412; *Village of Spillertown v. Prewitt* (1961), 21 Ill. 2d 228.) A nuisance which affects the public welfare may be abated in equity on the application of the proper officer, and this is particularly true where the ordinary method of prosecution for the criminal offense either has proved ineffective or may in fact be ineffective. It is reasonable to conclude that the imposition of even the maximum fine of $200 a day may not be enough to dissuade defendants from this enterprise, and the circuit court did not err in permanently enjoining defendants' activities.

For the reasons stated the judgment of the appellate court is reversed and the order of the circuit court enjoining defendants' operations is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*