THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* FESTIVAL THEATRE CORPORATION *et al.*, Defendants-Appellants.

First District (5th Division)    No. 79-445

Opinion filed August 29, 1980.

---

[5] Defendant does not argue that plaintiff failed to prove the fairness and reasonableness of these fees.

Patrick A. Tuite, of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke and Wayne Oesterlin, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

This appeal raises the issue of whether a theatrical performance, alleged to be obscene, may be enjoined as a public nuisance consistent with the first amendment freedom of speech.

Plaintiff, City of Chicago, brought an action for injunctive relief against defendants, Festival Theatre Corporation and Paul Liang, operator of the theater. According to plaintiff's complaint, defendants used their theater to conduct live stage shows which consist entirely of obscene sexual acts, in violation of section 11—20 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 11—20). Plaintiff requested that this conduct be enjoined. Following a hearing, where several Chicago police officers who witnessed these "shows" testified, the trial court found the "shows" to be a public nuisance, and entered a permanent injunction. On appeal, defendants maintain that obscenity cannot be enjoined as a public nuisance, and, alternatively, that the injunction by the trial court constitutes a prior restraint of free speech in violation of the first amendment to the United States Constitution (U.S. Const., amend. 1) and article 1, section 4 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. 1, §4).

On July 26, 1978, and August 14, 1978, Chicago police officers, dressed in plainclothes, paid a $5 admission price to enter defendants' theater. On both occasions the officers observed a "live stage show" involving two women. The show opened with both women performing a dance to background music. As they danced they removed their clothing and began kissing and fondling each other. They then engaged in actual or simulated acts of cunnilingus and masturbation. After each "show," the women were placed under arrest.

On August 23, 1978, a Chicago police officer observed a "live stage show" involving a man and a woman at defendants' theater. The "show" began with the woman, fully clothed, dancing alone on stage to background music. As she danced, she began to remove her clothing until she was completely nude. After the dancing finished, she was joined on stage by a partially clothed man. When he removed his clothing, they engaged in actual or simulated acts of sexual intercourse, fellatio and cunnilingus. Both individuals were arrested at the end of the "show.'" Colored stage lighting was used in all three "shows," and the genitals of the individuals were visible to the audience.

The stage was not visible from outside the theater, and the audience consisted of adults. The dance portion of the "shows" lasted less than five minutes, appeared rehearsed and, according to one officer, was somewhat artistic. The "shows" received applause from the audience, and no one was seen requesting a refund.

The trial court found these "shows" to be a public nuisance and entered a permanent injunction against defendants. More specifically, the order stated:

> "THE COURT DOTH FIND: That the live stage performance, as performed at the Festival Theater, 3912 N. Sheridan Road, Chicago, Illinois, is a public nuisance.
>
> THEREFORE, IT IS HEREBY ORDERED that defendants, Festival Theater Corporation and Paul N. Liang, their employees, agents and representatives, are hereby permanently enjoined and restrained, until further order of Court, from performing or permitting the performance of lewd acts of live persons, in violation of applicable City Ordinance and State Statutes, at 3912 N. Sheridan Road, Chicago, Illinois, for the entertainment, sexual arousal, or viewing by and of members of the public; including, but not limited to, the following of such acts:
>
> 1. Actual or simulated stimulation, fondling and/or massage of the genitals of one person by another person or by any part of the body of another person or by any part of the body of the first person himself or herself.
>
> 2. Actual or simulated stimulation, fondling and/or massage of the breasts and/or buttocks of one person by another person or by any part of the body of another person or by any part of the body of the first person himself or herself.
>
> 3. Conduct amounting to a lewd exhibition of the genitals.
>
> 4. Actual or simulated acts of sexual intercourse where the genitals and/or buttocks of one or more of the performers are exposed."

Defendant appeals from the entry of this order.

Opinion

A threshold issue in this case is whether plaintiff has an adequate remedy at law which would preclude the granting of injunctive relief. Defendants maintain that the criminal laws of this State (Ill. Rev. Stat. 1977, ch. 38, par. 11—20) afford plaintiff an adequate remedy at law by which it may regulate the alleged obscene "shows." We note that where the activity sought to be enjoined affects the public welfare and criminal prosecution has proved ineffective or may in fact be ineffective, a court may enjoin the activity. (*City of Chicago v. Cecola* (1979), 75 Ill. 2d 423, 389 N.E.2d 526; *City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 332 N.E.2d 487; and *Toushin v. City of Chicago* (1974), 23 Ill. App. 3d 797, 320 N.E.2d 202.) The hands of equity will not be bound merely because the activity sought to be enjoined also constitutes a criminal offense. (*Toushin.*) In the present case, the city seeks to enjoin these "shows" as a public nuisance because of their harmful effect on public morals and welfare. The city asserts that this deleterious effect on society continued

to exist despite the arrests made in this case and was only terminated by the injunction issued by the trial court. However, the record, even at this late day, does not disclose the ultimate disposition of those arrests. Consequently, we hold that the criminal laws do not afford an adequate remedy at law in this situation and as a result, equity may provide an available avenue of relief. We must now determine whether injunctive relief may be obtained consistent with the first amendment.

■■ Our starting point is that theatrical productions, like movies and books, are presumptively entitled to constitutional protection as free speech. (*Doran v. Salem Inn, Inc.* (1975), 422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561; *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 43 L. Ed. 2d 448, 95 S. Ct. 1239; *California v. La Rue* (1972), 409 U.S. 109, 34 L. Ed. 2d 342, 93 S. Ct. 390; and *P.B.I.C., Inc. v. Byrne* (D. Mass. 1970), 313 F. Supp. 757, *vacated and remanded* (1971), 401 U.S. 987, 28 L. Ed. 2d 526, 91 S. Ct. 1222.) Consistent with this proposition, we note that protected speech is not limited solely to the expression and communication of ideas, but may include forms of expression which also entertain. (*Winters v. New York* (1948), 333 U.S. 507, 92 L. Ed. 840, 68 S. Ct. 665; *In re Giannini* (1968), 69 Cal. 2d 563, 446 P.2d 535, *cert. denied* (1969), 395 U.S. 910, 23 L. Ed. 2d 223, 89 S. Ct. 1743.) Regardless of whether a form of expression entertains or communicates ideas, it falls outside the protective umbrella of free speech if it is obscene. (*Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607.) Thus, obscenity, in contrast to protected speech, is a proper subject of State regulation. (*Miller*, 413 U.S. 15, 18, 37 L. Ed. 2d 419, 427, 93 S. Ct. 2607, 2612.) The United States Supreme Court has described the State's interest in regulating obscenity as follows:

> "The States have the power to make a morally neutral judgment that public exhibition of obscene material, or commerce in such material, has a tendency to injure the community as a whole, to endanger the public safety, or to jeopardize, in Mr. Chief Justice Warren's words, the States' 'right * * * to maintain a decent society.' *Jacobellis v. Ohio*, 378 U.S., at 199 (dissenting opinion)." (*Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 69, 37 L. Ed. 2d 446, 464, 93 S. Ct. 2628, 2641.)

Recognizing that a line exists between protected speech and obscenity and that States do have legitimate interests in regulating obscenity forms the first two analytical steps in this area of first amendment law. The succeeding steps of analysis involve the definitional test of obscenity and methods States may employ to regulate obscenity.

In *Miller*, the United States Supreme Court announced its latest definition of obscenity. The *Miller* court stated:

> "The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community stan-

dards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra*, at 230, quoting *Roth v. United States, supra*, at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific values. * * * If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." (*Miller*, 413 U.S. 15, 24-25, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.)

Sexuality is not synonymous with obscenity, and expression which is sexually oriented, but not obscene, commands full constitutional protection as speech. (See *Roth v. United States* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304; *City of Rolling Meadows v. Kohlberg* (1980), 83 Ill. App. 3d 10, 403 N.E.2d 1040.) Justice Brennan, speaking for the court in *Bantam Books, Inc. v. Sullivan* (1963), 372 U.S. 58, 66, 9 L. Ed. 2d 584, 590, 83 S. Ct. 631, 637, wrote that protected speech is often distinguished from obscenity "only by a dim and uncertain line." In appreciation of the complexity of this determination, the court requires that State procedures employed to ascertain obscenity have the necessary sensitivity to the first amendment values at stake. (*McKinney v. Alabama* (1976), 424 U.S. 669, 47 L. Ed. 2d 387, 96 S. Ct. 1189; *Speiser v. Randall* (1958), 357 U.S. 513, 2 L. Ed. 2d 1460, 78 S. Ct. 1332.) Although the line separating obscenity from protected speech may be elusive and obscure, a court should not hesitate in its duty to decide that issue because of fear of its constitutional significance. When called upon to make such a decision, we will act with the requisite caution and deference for the significant interests involved, but without any unnecessary hesitation or fear. We share Mr. Chief Justice Burger's confidence that the judiciary is capable of distinguishing "commerce in ideas, protected by the First Amendment, from commercial exploitation of obscene material." (*Miller*, 413 U.S. 15, 36, 37 L. Ed. 2d 419, 438, 93 S. Ct. 2607, 2621.) However, the present case does not require us to draw the line between obscenity and protected speech. Rather, this case turns on whether the law of public nuisance has the necessary sensitivity to enjoin obscenity.

Civil injunction procedures have been recognized as a permissible means by which to regulate obscenity. (See *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628; *Kingsley Books, Inc. v. Brown* (1957), 354 U.S. 436, 1 L. Ed. 2d 1469, 77 S. Ct. 1325.) In examining public nuisance law in Illinois, the first question facing us is whether this action is maintainable, if at all, as a statutory action under

section 1 of "An Act regarding places used for purposes of lewdness, assignation, or prostitution * * *" (the Act) (Ill. Rev. Stat. 1977, ch. 100½, par. 1) or whether it is maintainable under the common law. The statute provides:

> "That all buildings and apartments, and all places, and the fixtures and movable contents thereof, used for purposes of lewdness, assignation, or prostitution, are hereby declared to be public nuisances, and may be abated as hereinafter provided. The owners, agents, and occupants of any such building or apartment, or of any such place shall be deemed guilty of maintaining a public nuisance, and may be enjoined as hereinafter provided." (Ill. Rev. Stat. 1977, ch. 100½, par. 1.)

In short, we must determine whether obscenity is included within the terms "lewdness, assignation or prostitution." Our supreme court addressed this question in dictum in *People v. Movies, Inc.* (1971), 49 Ill. 2d 85, 273 N.E.2d 366. In that case, defendant appealed from an order of the trial court impounding its films, allegedly obscene, pending a full criminal trial on the charge of obscenity (Ill. Rev. Stat. 1969, ch. 38, par. 11—20) against defendant. The court dismissed the appeal for want of a final judgment. In passing, the court observed that the impoundment hearing was comparable to statutory actions to abate a nuisance, and noted that "we are not aware of any comparable statutory proceeding applicable to obscene material." *Movies, Inc.*, 49 Ill. 2d 85, 87, 273 N.E.2d 366, 367.

■■ This question was next raised in *People v. Goldman* (1972), 7 Ill. App. 3d 253, 287 N.E.2d 177. In *Goldman*, an action was brought under the Act to enjoin the sale and distribution of obscene materials at an adult bookstore. The *Goldman* court squarely faced the issue of whether obscenity is enjoinable as a public nuisance under the Act and concluded that obscenity is not included within the terms "lewdness, prostitution, or assignation" of the Act. That court refused to read into the Act a meaning that was not there. This conclusion was also reached in *People ex rel. Difanis v. Futia* (1978), 56 Ill. App. 3d 920, 373 N.E.2d 530. The *Futia* court also noted that the legislature's inaction following a judicial construction of a statute (the *Goldman* opinion) presumptively indicates that the construction was in accord with the legislative intent. (*Futia*; see also *Illinois Power Co. v. City of Jacksonville* (1960), 18 Ill. 2d 618, 165 N.E.2d 300.) Since the legislature has yet to act on the *Goldman* interpretation of the Act, this presumption is equally applicable today. Based upon the decisions in *Goldman* and *Futia*, combined with the legislature's presumed acquiescence, we hold that obscenity may not be enjoined as a public nuisance under the Act.

Whether obscenity, in general, may be enjoined under a common-law theory of public nuisance is a question we now determine. Defendants cite *People ex rel. Carey v. Route 53 Drive-In* (1976), 45 Ill. App. 3d 81,

358 N.E.2d 1298, for the proposition that obscenity cannot be enjoined as a common-law public nuisance. We believe defendants' interpretation of that case is mistaken. In *Carey*, plaintiff sought to enjoin as a common-law public nuisance the showing of obscene motion pictures at a public drive-in. The court's decision rested on its conclusion that plaintiff failed to offer sufficient evidence to establish the existence of a public nuisance. The court explained that the harm caused by the exhibition of these films was limited and private in nature and thus, not a public nuisance. After deciding the case on this issue, the court, relying on *People v. Goldman* (1972), 7 Ill. App. 3d 253, 287 N.E.2d 177, stated:

> "Although the State here has proceeded on the theory of common law nuisance, the parameters of the law of nuisance insofar as it may be used to enforce the law of obscenity is a matter for the legislature to determine." (*Route 53 Drive-In*, 45 Ill. App. 3d 81, 84, 358 N.E.2d 1298, 1300.)

As we stated above, the *Goldman* case decided only that obscenity could not be enjoined under the Act. (Ill. Rev. Stat. 1977, ch. 100½, par. 1.) Consequently, the *Goldman* decision has no bearing on the viability of a nuisance action at common law to abate alleged obscenity. Moreover, our supreme court in *City of Chicago v. Cecola* (1979), 75 Ill. 2d 423, 389 N.E.2d 526, expressly held that the Act "was not intended to displace common law actions to abate public nuisances." (*Cecola*, 75 Ill. 2d 423, 427, 389 N.E.2d 526, 528.) The same conclusion has been reached before. (*E.g., People ex rel. Dyer v. Clark* (1915), 268 Ill. 156, 108 N.E. 994; *Village of Bensenville v. Botu, Inc.* (1976), 39 Ill. App. 3d 634, 350 N.E.2d 239; *City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 322 N.E.2d 487.) Because the Act does not exclude common-law nuisance actions, we turn our attention to whether obscenity was enjoinable as a public nuisance at common law.

The late Dean William L. Prosser provided this definition of a public nuisance: An act or omission " 'which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all her majesty's subjects.' " (Prosser, Torts §88, at 583 (4th ed. 1971).) The interference with a public interest or right must be both substantial and unreasonable. (*Prosser*, Torts §87, at 580 (4th ed. 1971).) Public nuisance includes interference with "public morals, as in the case of houses of prostitution, illegal liquor establishments, gambling houses, indecent exhibitions, bullfights, unlicensed prize fights or public profanity." (*Prosser*, Torts §88, at 584 (4th ed. 1971).) According to the commentators, under the common law, activities which offend public morals and decency are subject to abatement as public nuisances. See 2 Dooley, Modern Tort Law §31.03, at 216 (1977); Wood, Law of Nuisances 87 (3d ed. 1893).

Plaintiff cites *City of Chicago v. Geraci* (1976), 30 Ill. App. 3d 699, 332 N.E.2d 487, in support of its position that obscenity is enjoinable as a

common-law public nuisance. We, however, do not believe the *Geraci* decision is relevant to this appeal. In *Geraci*, the city of Chicago sought to enjoin as a public nuisance, defendant's operation of a massage parlor which allowed its female employees to perform masturbatory massages on male patrons. That case held that although the activity complained of may not fall within the statutory definitions of prostitution ( Ill. Rev. Stat. 1973, ch. 38, par. 11—14, or Ill. Rev. Stat. 1973, ch. 100½, par. 1), it constituted a specialized form of prostitution and thus was enjoinable as a common-law public nuisance. The *Geraci* decision recognized only that this form of prostitution is enjoinable at common law. The *Geraci* decision involved neither obscenity nor freedom of speech under the first amendment. Thus, it is entirely distinguishable from the present appeal.

We have found two Illinois cases which discuss whether interference or injury to the public morals constitutes a public nuisance. In *City of Chicago v. Shaynin* (1913), 258 Ill. 69, 101 N.E. 224, the plaintiff sought to enjoin as a public nuisance a "museum of anatomy." The museum contained models and illustrations of the human body. In deciding whether the museum's displays constituted a public nuisance, the court stated:

> "Public nuisances, strictly speaking, are such as result from the violation of public rights. Of this class are those intangible injuries that result from the immoral, indecent and unlawful acts of parties that become nuisances by reason of their deleterious influence upon the morals or well being of society." (*Shaynin*, 258 Ill. 69, 72.)

Similarly, in *Stevens v. Morenous* (1912), 169 Ill. App. 282, equitable relief was sought to enjoin a play, which was alleged to be "frivolous and immoral." The court there said: "Theatres conducted properly and so located * * * are not nuisances *per se* at common law, and only become nuisances when they are used for the exhibition of immoral and vicious plays or when they call together disorderly and vicious people." (*Morenous*, 169 Ill. App. 282, 285.) Since the State's interest in regulating obscenity is to maintain a decent society  (*Miller*) and the common law recognized as a public nuisance those activities which injured the public morals or decency (*Shaynin*; *Morenous*), we conclude that obscenity as a conduct which offends the public morals and decency may be enjoined under a common-law theory of public nuisance. (See also *Napro Development Corp. v. Town of Berlin* (1977), 135 Vt. 353, 376 A.2d 342; *General Corp. v. State ex rel. Sweeton* (1975), 294 Ala. 657, 320 So.2d 668, *cert. denied* (1976), 425 U.S. 904, 47 L. Ed. 2d 753, 96 S. Ct. 1494.) The question then remaining before us is whether the first amendment allows enjoinment of alleged obscenity, in the form of human conduct, as a public nuisance at common law.

■■ Before proceeding further, we feel it is necessary to discuss the signif-

icance that human conduct performed before an audience is the communicative activity involved here as compared to the inanimate mediums of expressions of literature, pictoral representations and films. In *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 557, 43 L. Ed. 2d 448, 458, 95 S. Ct. 1239, 1246, the court stated that: "Each medium of expression, of course, must be assessed for First Amendment purposes by standards suited to it, for each may present its own problems." When analyzing the constitutional protection afforded by the first amendment to various forms of expression, guidance can be found in the Supreme Court's analysis of what first amendment standard should be applied to films:

> "[T]he basic principles of freedom of speech and the press, like the First Amendment's command, do not vary. These principles, as they have frequently been enunciated by this Court, make freedom of expression the rule. There is no justification in this case for making an exception to that rule." (*Joseph Burstyn, Inc. v. Wilson* (1952), 343 U.S. 495, 503, 96 L. Ed. 1098, 1106, 72 S. Ct. 777, 781.)

Thus, a different set of constitutional principles, developed to enforce the first amendment, does not exist for each medium of expression. Rather, in applying the same set of principles, courts should take into account the differences native to each medium of expression. (See *P.B.I.C., Inc. v. Byrne* (D. Mass. 1970), 313 F. Supp. 757, *vacated and remanded* (1971), 401 U.S. 987, 28 L. Ed. 2d 526, 91 S. Ct. 1222.) In *P.B.I.C., Inc. v. Byrne*, the district court was asked to enjoin State prosecution of the play "Hair" for obscenity. The district court expressly considered the unique characteristics of live performances in comparison to film as mediums of expression:

> "The impact on the theater patron may well differ depending on whether the acts being viewed are presented on a film screen or are performed or simulated by live persons a few rows in front of him. The immediacy of the live theater, its easy access to the audience, its newly rediscovered capacity for improvisation, and its consequent unpredictability even to an adult and sophisticated play-goer distinguish it from a film production where the possibilities of sexual exhortation and of giving offense are fixed in celluloid." (*P.B.I.C., Inc. v. Byrne* (D. Mass. (1970), 313 F. Supp. 757, 762.)

The significance of these differences, especially the capacity to change the contents and form of a live show each time it is performed, will be seen later in this opinion. For now we would stress that our decision today is limited to the medium of expression involved in this case, live performances. Whether the sale and distribution of obscene literature and films

may be enjoined as a public nuisance at common law is not before this court, and we therefore express no opinion on that question.

Our research has uncovered two groups of cases which illuminate the complex legal questions before us. The first group directly decided the issue of whether obscenity is enjoinable, consistent with the first amendment, as a public nuisance at common law. The second group examined State statutes which authorized the abatement of obscenity as a public nuisance. For purposes of brevity, we will examine just one case from each group. In *Grove Press Inc. v. City of Philadelphia* (3d Cir. 1969), 418 F.2d 82, plaintiff, a film distributor, sought protective injunctive relief from the City of Philadelphia's (City) efforts to enjoin the showing of an alleged obscene film. According to the City, the obscene film was enjoinable either as a public nuisance at common law or as a violation of Pennsylvania's criminal obscenity statute. Injunctive relief, granted by the district court, restrained the City from proceeding in the State courts on a theory of common-law public nuisance. On appeal, the court considered the issue against the backdrop of those expressions protected by the first amendment and those standards which outline the perimeter of proper governmental regulation. (*Grove Press Inc.*, 418 F.2d 82, 87.) The court then examined relevant Pennsylvania law defining public nuisance as "injury to the public" resulting from an "unreasonable" use of one's property. (See *Reid v. Brodsky* (1959), 397 Pa. 463, 156 A.2d 334.) These standards or tests for common-law public nuisances, according to the court, were insufficient in cases involving First Amendment freedoms:

"We have concluded that as a standard for regulating first amendment rights, neither 'injury to the public,' nor 'unreasonableness,' standing alone, is sufficiently narrow or precise to pass constitutional muster. Each is too elastic and amorphous a standard by which to restrain the exercise of free expression. What is encountered with the sprawling doctrine of public nuisance is an attempt to restrict First Amendment rights by means analogous to those under 'a statute sweeping in a great variety of conduct under a general and indefinite characterization, and leaving to the executive and judicial branches too wide a discretion in its application.' *Cantwell v. Connecticut*, 310 U.S. 296, 308, 60 S. Ct. 900, 905, 84 L. Ed. 1213 (1940).

The common law of public nuisance may be a perfectly valid method by which to implement a state's police power in certain defined circumstances where, for example, it is used to restrain that which is prohibited by other constitutionally appropriate standards. It may not be used, however, both to define the standards of protected speech and to serve as the vehicle for its restraint." (*Grove Press Inc.*, 418 F.2d 82, 88.)

In summary, the court in *Grove Press Inc.*, found the legal test for determining an activity a public nuisance was an impermissibly vague method of discerning whether an expression is protected speech or obscene. The concept of public nuisance at common law lacks the "necessary sensitivity" required of State procedures to ascertain whether speech is obscene and, as such, may be restrained. See *McKinney v. Alabama* (1976), 424 U.S. 669, 47 L. Ed. 2d 387, 96 S. Ct. 1189.

Additionally, we note that two State supreme courts have expressly followed the decision in *Grove Press, Inc.*, when faced with this question. *Napro Development Corp. v. Town of Berlin* (1977), 135 Vt. 353, 376 A.2d 342; *Ranck v. Bonal Enterprises, Inc.* (1976), 467 Pa. 569, 359 A.2d 748; *Commonwealth v. MacDonald* (1975), 464 Pa. 435, 347 A.2d 290, *cert. denied* (1976), 429 U.S. 816, 50 L. Ed. 2d 75, 97 S. Ct. 57.

The second group of cases is best exemplified by the California Supreme Court's decision *en banc* in *People ex rel. Busch v. Projection Room Theatre* (1976), 17 Cal. 3d 42, 550 P.2d 600, 130 Cal. Rptr. 328, *cert. denied sub nom. Van de Kamp v. Projection Room Theater* (1976), 429 U.S. 922, 50 L. Ed. 289, 97 S. Ct. 320. In *Busch*, plaintiffs, representing the city and county of Los Angeles, sought to enjoin the operation of defendants' bookstores and theaters which exhibited allegedly obscene books or films. The action was predicated on the California public nuisance statutes which define public nuisance as *"[a]nything* which is injurious to health, or is indecent, or offensive to the senses, * * * so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons (Emphasis added.) * * * ." (Cal. Penal Code §370 (West).) The *Busch* court held that obscenity falls within the pale of the statute, and that the statutory language "indecent or offensive to the senses" was not unconstitutionally vague. According to the *Busch* court's reasoning, the statutory language could be authoritatively construed by that court consistent with the standards enunciated in *Miller*. Finally, the *Busch* court addressed the question of whether injunctions issued under the authority of this statute would violate the constitutional principle against prior restraint. The *Busch* court stated:

> "Thus, in the matters before us if the trial court finds the subject matter obscene under prevailing law an injunctive order may be fashioned that is 'proper and suitable' in each case. It is entirely permissible from a constitutional standpoint to enjoin further exhibition of *specific* magazines or films which have been finally adjudged to be obscene following a full adversary hearing." (Emphasis added.) (*Busch*, 17 Cal. 3d 42, 57, 550 P.2d 600, 609, 130 Cal. Rptr. 328, 337.)

This ruling is expressly limited to "specific magazines or films," found to

be obscene, and any extension of the injunction beyond this point would constitute a prior restraint. Specifically, the *Busch* court wrote:

> "While we have concluded that a court of equity, having determined *particular* magazines or films to be obscene, after a full adversary hearing, may enjoin the exhibition or sale thereof by those responsible, we emphasize that the closing of such bookstores or theaters, either temporarily or permanently, or the enjoining of the exhibition or sale on said premises of magazines or films *not specifically so determined to be obscene*, constitutes an impermissible prior restraint in violation of the First and Fourteenth Amendments to the United States Constitution." (Emphasis added.) (*Busch*, 17 Cal. 3d 42, 59, 550 P.2d 600, 610, 130 Cal. Rptr. 328, 338.)

There are two points worth noting in analyzing the *Busch* decision: First, the injunctive action in that case was based on a statute which embodied the California legislature's decision to provide civil injunctive procedures as a method to regulate alleged obscenity. Second, the *Busch* court carefully limited the scope of permissible injunctions to specific books or films judicially determined to be obscene.

Justice Tobriner, joined by Justice Mosk, dissented from the majority opinion in *Busch*. Initially, Justice Tobriner maintained that California's public nuisance statutes do not cover the exhibition of obscene books or films to consenting adults. According to Justice Tobriner, no harm to either the community, neighborhood or a considerable number of persons, necessary to constitute a public nuisance, under the statute, results from this activity. More important to our case, however, is Justice Tobriner's determination that public nuisance concepts as applied to obscenity are inherently vague, and thus, impermissible. Justice Tobriner stated that the determination of obscenity under the *Miller* standards, which are vague to begin with, become virtually impossible to apply when coupled with the conceptual and procedural difficulties of public nuisance. More specifically, Justice Tobriner pointed out that the material must be found obscene and the public harm caused by obscenity ascertained. Both of these complex decisions must be made by a trial judge alone, since injunctive proceedings are conducted without a jury. Justice Tobriner concluded:

> "In like manner, the 'incidence' of the decision of the majority in this case is to reduce the adult population to reading only those books that do not offend the sensibilities of the most 'sensitive' trial judge in their community. Surely such a procedure robs free speech of the stringent protection guaranteed by our most cherished constitutional precepts.
>
> In sum, California's public nuisance statutes simply were not

drafted for the purpose to which the majority commits them. The sword of public nuisance is a blunt one, admirably designed to curb noxious odors or to quell riots, but ill suited to the delicate sphere of the First Amendment where legal overkill is fatal." (*Busch*, 17 Cal. 3d 42, 74, 550 P.2d 600, 620, 130 Cal. Rptr. 328, 348.)

In short, the dissent of Justice Tobriner attacks the use of public nuisance as a means for restricting freedom of expression. Implicit in his reasoning is the suggestion that obscenity may only be regulated through the criminal process.

The *Busch* opinion does not stand alone. Several State courts have, consistent with *Busch*, upheld statutes permitting the enjoinment of alleged obscenity as a public nuisance. (See, *e.g.*, *State ex rel. Blee v. Mohney Enterprises* (1972), 154 Ind. App. 244, 289 N.E.2d 519; *State v. A Motion Picture Entitled "The Bet"* (1976), 219 Kan. 64, 547 P.2d 760; *State ex rel. Wampler v. Bird* (Mo. 1973), 499 S.W.2d 780; *State ex rel. Keating v. A Motion Picture Film Entitled "Vixen"* (1973), 35 Ohio St. 2d 215, 301 N.E.2d 880; and *State ex rel. Field v. Hess* (Okla. S. Ct. 1975), 540 P.2d 1165.) Our review of *Grove Press, Inc.*, and *Busch* reveals several legal issues we must consider in deciding this case.

First, we must decide whether a public nuisance action at common law may be maintained in conformity with the requirements of *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607. As noted above, the *Miller* court mandated that the proscribed sexual conduct or activity be "specifically defined by the applicable state law." (*Miller*, 413 U.S. 15, 24, 37 L. Ed. 2d 419, 430, 93 S. Ct. 2607, 2615.) The common law, of course, provides no guidelines or rules which specifically define what activity is enjoinable. This is a factual determination, made on an *ad hoc basis, in light of the totality of facts. For example, noxious odors emitted by a chemical factory in a small rural village may constitute a public nuisance; whereas, the same factory in an industrialized section of a major urban center may not constitute a public nuisance. Thus, by its very nature, the concept of public nuisance at common law falls short of the mandate of the *Miller* court requiring that the proscribed conduct be specifically defined.

The *Miller* court, however, did declare that a State law may be "construed" in such a way as to conform with the standards it announced that day. In fact, in *United States v. 12 200-ft. Reels of Super 8 mm. Film* (1973), 413 U.S. 123, 37 L. Ed. 2d 500, 93 S. Ct. 2665, the Supreme Court took the opportunity to construe two Federal statutes, 19 U.S.C. §1305(a) (1976) and 18 U.S.C. §1462 (1976), in a manner consistent with the *Miller* decision by limiting material regulated by those statutes, "to patently offensive representations or descriptions of that specific 'hard core' sexual

conduct given as examples in *Miller v. California*, at 25." (*12 200-ft. Reels*, 413 U.S. 123, 130 n.7, 37 L. Ed. 2d 500, 507 n.7, 93 S. Ct. 2665, 2670 n.7.) Thus, we could, under *Miller* and *12 200-ft. Reels*, add the *Miller* standards to the basic definition of a public nuisance at common law. We, however, believe this to be too great a leap. To begin with, there are various forms of sexual conduct which may offend public decency, and we would not know which forms should be prohibited. More importantly, we believe this determination is best left to the legislature. As the elected representatives of the people of this State, they should decide the important social questions that are intertwined with the obscenity problem. We must not usurp the prerogatives of the legislature in this area. Furthermore, we note that our legislature has yet to act in response to *People v. Goldman* (1972), 7 Ill. App. 3d 253, 287 N.E.2d 177, which held obscenity to be outside the activities considered by statute (Ill. Rev. Stat. 1977, ch. 100½, par. 1) to be a public nuisance. Although the legislature has had ample opportunity to amend this statute to include obscenity and conform with *Miller*, it failed to do so. Where the legislature has chosen not to act in this sensitive area, we will follow suit. As additional support, we note that in similar cases other courts have refused to construe State statutes to comply with *Miller*. See *State ex rel. Faches v. N.D.D., Inc.* (Iowa 1975), 228 N.W.2d 191; *Commonwealth v. MacDonald* (1975), 464 Pa. 435, 347 A.2d 290, *cert. denied* (1976), 429 U.S. 816, 50 L. Ed. 2d 75, 97 S. Ct. 57; *Art Theater Guild, Inc. v. State ex rel. Rhodes* (Tenn. 1974), 510 S.W.2d 258; and *Napro Development Corp. v. Town of Berlin* (1977), 135 Vt. 353, 376 A.2d 342.

■■ In our opinion, the concept of public nuisance at common law is accompanied by an aura of vagueness. Because the concept is not "carefully limited" to "specifically defined" conduct which may be enjoined (*Miller*, 413 U.S. 15, 23-24, 37 L. Ed. 2d 419, 430, 93 S. Ct. 2607, 2614-15), an individual may exercise self-censorship in order to avoid civil sanctions. This "chill" on an individual's first amendment freedoms is unacceptable. Thus, we hold that the lack of precision inherent in the concept of public nuisance at common law transgresses the constitutional boundaries established by *Miller*, which provide that conduct regulated as obscenity must be specifically defined.

Second, where obscenity is sought to be enjoined as a public nuisance the trial court must determine what harm or injury results to the public interest. In this case, the question would be: whether a performance of questionable taste and morality conducted behind closed doors and exhibited only to consenting adults constitutes a substantial and unreasonable interference with a public interest. This question has not been confronted by the Supreme Court because of the court's definitional approach to

obscenity cases; obscenity does not fall within the definition of speech protected by the first amendment. (See *Miller; Roth v. United States* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304.) The Supreme Court, however, has concluded that a State legislature "could quite reasonably determine" that a connection exists between antisocial behavior and obscene material. *(Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 60-61, 37 L. Ed. 2d 446, 459, 93 S. Ct. 2628, 2637.) While the Supreme Court in *Paris Adult Theatre I* has recognized that a State legislature could make this determination, we believe the judiciary is powerless to do so.

Third, an injunctive proceeding also has certain procedural trappings which diminish its desirability as a means to regulate obscenity. Generally, an injunction hearing is conducted with the trial court as trier of fact and the plaintiff's burden of proof is only the preponderance of the evidence standard. Under Illinois law, however, in an action in equity the trial court in its discretion may impanel a jury to decide certain issues. (Ill. Rev. Stat. 1977, ch. 110, par. 63.) The verdict of a jury in such a case is advisory and not binding on the trial court. *(Ray v. Winter* (1976), 39 Ill. App. 3d 567, 350 N.E.2d 331, *rev'd on other grounds* (1977), 67 Ill. 2d 296, 367 N.E.2d 678.) Under the *Miller* guidelines for defining obscenity, the trier of fact is to apply "contemporary community standards" in deciding whether material or conduct is obscene. *(Miller,* 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.) The role of the jury in assaying "contemporary community standards" was stressed by the court in both *Miller* and *Hamling v. United States* (1974), 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887. The court, however, in *McKinney v. Alabama* (1976), 424 U.S. 669, 47 L. Ed. 2d 387, 96 S. Ct. 1189, held that the Constitution does not require a jury trial in civil obscenity proceedings. While a jury trial may not be required by the Constitution, we believe it is a desirable safeguard against erroneous determinations of obscenity. The jury as a representative cross-section of the community is best fit to conduct the inquiry into "contemporary community standards" required by *Miller.* The complexity of the obscenity test, expressly recognized by the court in *Marcus v. Search Warrant* (1961), 367 U.S. 717, 6 L. Ed. 2d 1127, 81 S. Ct. 1708, and *Jacobellis v. Ohio* (1964), 378 U.S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676 (Stewart, J., concurring), necessitates the use of available safeguards to prevent erroneous denial of the first amendment protection to protected expression. *(Marcus; McKinney v. Alabama* (1976), 424 U.S. 669, 47 L. Ed. 2d 387, 96 S. Ct. 1189 (Brennan, J., dissenting).) Absent a declaration of the legislature, we will not endorse a cause of action restraining alleged obscenity where the presence of a jury to decide the obscenity question is not mandatory. While the requirements of a jury would lengthen the trial of these cases, we would rather sacrifice speed and efficiency than need-

lessly suffer restraints erroneously imposed upon forms of expression protected by the first amendment. See *McNary v. Carlton* (Mo. 1975), 527 S.W.2d 343 (*en banc*).

Similarly, while the Constitution permits a preponderance-of-the-evidence standard in civil actions to restrain obscenity (*McKinney*), the above rationale casts doubt on its desirability. Again, the chance for error in this area must be guarded against.

Fourth, we must examine the nature of the injunction which would issue if an action to enjoin obscenity as a public nuisance at common law is maintainable. The injunction will take one of two forms. First, the injunction may prohibit certain types of conduct, presumably obscene, from being performed in defendant's place of business. This form of injunction was issued by the trial court here. With an injunction of this type, we must determine its validity against the constitutional prohibition of prior restraints. The second form of injunction is limited to the specific conduct which has been determined to be obscene. The injunction is narrowly drafted to that conduct alone. Since live conduct can be altered continuously, and thus, each performance may range from legitimate to illegitimate expression, the second form of injunction carries policy questions about its effectiveness.

■■ The philosophy behind the Supreme Court's hostility to prior restraints of speech was expressed by Blackstone in his Commentaries on the Common Law:

> "Every freeman has an undoubted right to lay what sentiments he pleases before the public: to forbid this, is to destroy the freedom of the press: but if he publishes what is improper, mischievious, or illegal, he must take the consequence of his own temerity." (4 W. Blackstone, Commentaries* 151, 152; *Near v. Minnesota* (1931), 283 U.S. 697, 713-14, 75 L. Ed. 1357, 1366, 51 S. Ct. 625, 630 (quoting Blackstone).)

More recently, the Supreme Court has stated its philosophy on prior restraints as follows:

> "[A] free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." (*Southeastern Promotions, Ltd. v. Conrad* (1974), 420 U.S. 546, 559, 43 L. Ed. 2d 448, 459, 95 S. Ct. 1239, 1246-47.)

Thus, any system of prior restraint bears a heavy presumption against its constitutional validity. (*Bantam Books, Inc. v. Sullivan* (1963), 372 U.S. 58, 9 L. Ed. 2d 584, 83 S. Ct. 631.) A prior restraint on live expression, in

contrast to books or films, bears an even heavier presumption against its validity because the content of future expression is unknown. (*People ex rel. Hicks v. "Sarong Gals"* (1972), 27 Cal. App. 3d 46, 103 Cal. Rptr. 414.) This rule recognizes that few of us have the ability to predict what conduct will be legally obscene. Moreover, we will not presume future expressions to be obscene. Finally, we must stress that prior restraints are not *per se* unconstitutional. (*Southeastern Promotions, Ltd.*) The validity of a prior restraint depends on the scope of the statute or order involved and the procedural safeguards employed to prevent a restraint on protected speech. *Southeastern Promotions, Ltd.*

■■ The first form of injunction, which was used in this case, prohibits the performance of certain physical acts inside the defendants' theater. Implicit in the trial court's injunction is the conclusion that these acts would render any show, performed in the defendants' theater, obscene and thus, a public nuisance. The flaw in this reasoning is obvious. A determination of obscenity under the *Miller* guidelines requires that the work or conduct "taken as a whole, appeals to the prurient interest" and also, that the work or conduct "taken as a whole, lacks serious literary, artistic, political or scientific value." (*Miller*, 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.) Since the trial court has not seen the future "shows" containing any of the enjoined acts and does not know the remaining content of these "shows," its determination of obscenity as to these future shows is premature. It is entirely possible that a future "show" at defendants' theater, containing one of the enjoined acts, may be protected speech under the *Miller* guidelines. Although a "show" may contain one of the listed acts, taken as a whole, it may neither appeal to the prurient interest nor lack serious literary, political, artistic or scientific value. This possibility compels us to condemn this injunction.

These principles have been recently applied by the Supreme Court in *Vance v. Universal Amusement Co.* (1980), 445 U.S. 308, 63 L. Ed. 2d 413, 100 S. Ct. 1156. In *Vance*, plaintiff, the operator of an adults only movie theater, brought suit in the Federal district court to declare the Texas public nuisance statutes unconstitutional and to enjoin any future enforcement of the statute. The statutory scheme allowed the State to enjoin for an indefinite duration the exhibition of obscene films and adopted the definition of obscenity found in the Texas criminal statutes. The Fifth Circuit Court of Appeals, in an eight to six decision, held that the statute violated the constitutional prohibition on prior restraints. (*Universal Amusement Co. v. Vance* (5th Cir. 1978), 587 F.2d 159 (*en banc*).) The court stated:

> "An order banning the exhibition of unnamed 'obscene' films would prohibit the showing of films that have not been judicially declared obscene, as well as films that may not have even been

produced. * * * Incorporation of the statutory definition of obscenity—usually a listing of forbidden sexual acts or acrobatics—merely begs the question, for few of us have the omniscience to determine, in advance of a final judicial ruling, whether a film is legally obscene. Moreover, it is possible that a film containing many of the acts listed in the statute may eventually be held *not* to be obscene, since the work must be taken as a whole. *Miller v. California, supra,* and since state law cannot define the 'contemporary community standards' that must be applied by the fact finder. *Smith v. United States,* 431 U.S. 291, 97 S. Ct. 1756, 52 L. Ed. 2d 324 (1977). An injunction that forbids the showing of any film portraying the particular acts enumerated in the obscenity statutes suppresses future films because past films have been deemed offensive. As Chief Justice Hughes wrote in *Near v. Minnesota, supra* 283 U.S. at 713, 51 S. Ct. at 630, '[t]his is of the essence of censorship.' " (Emphasis in original.) (*Universal Amusement Co.,* 587 F.2d 159, 169.)

The dissenters maintained that the injunction issued under the statute would impose no greater a prior restraint than a criminal statute prohibiting exhibition of material deemed obscene under *Miller.*

In a brief *per curiam* opinion, the Supreme Court upheld the Court of Appeals decision and held that the injunction issued under the Texas statute would be an impermissible prior restraint. (*Vance v. Universal Co.* (1980), 445 U.S. 308, 63 L. Ed. 2d 413, 100 S. Ct. 1156.) The Supreme Court stated:

"As the District Court and the Court of Appeals construed Art. 4667(a), when coupled with the Texas Rules of Civil Procedure, it authorizes prior restraints of indefinite duration on the exhibition of motion pictures that have not been finally adjudicated to be obscene. Presumably, an exhibitor would be required to obey such an order pending review of its merits and would be subject to contempt proceedings even if the film is ultimately found to be nonobscene. Such prior restraints would be more onerous and more objectionable than the threat of criminal sanctions after a film has been exhibited, since nonobscenity would be a defense to any criminal prosecution." (*Universal Amusement Co.* 445 U.S. 308, 316, 63 L. Ed. 2d 413, 420-21, 100 S. Ct. 1156, 1161.)

Our Federal Constitution permits the government to subsequently punish those who engage in unprotected speech, but only in rare cases may the government restrain the same expression before it occurs. (See *Fehlhaber v. State* (E.D. N.C. 1978), 445 F.Supp. 130; *Parish of Jefferson v. Bayou Landing Ltd., Inc.* (La. 1977), 350 So. 2d 158.) Accordingly, the first form

of injunction, and the injunction issued by the trial court below, constitutes an impermissible restraint of expression.

The other form of injunction would enjoin only the specific conduct or material expressly held to be obscene. The injunction order would be narrowly drafted to the specific conduct and material involved. For example, if this type of injunction were issued in the present case, it would describe in detail the "shows" which the trial court has previously determined to be obscene. As a vehicle of relief from a public nuisance, the effectiveness of such an injunction is questionable. Live conduct, as we noted above, is changeable from moment to moment day to day. The contents of a performance may be altered continuously by design or by improvisation. Consequently, once an injunction of this type is issued, defendants could alter their production in such a manner as to no longer to be the show described in the injunction. This would emasculate the effectiveness of the trial court's injunction. We are not saying that an injunction of questionable efficiency is invalid, but it is one factor which cautions us against accepting this method of regulating obscenity.

On the other hand, if the subject of the injunction was a film or book, the injunction would be limited to the named books or films found to be obscene. Since the content of particular books or films is fixed, the injunction would be effective as to those named materials. With regard to literature and films, this form of injunction would be a more desirable method of regulating obscenity. Our ruling today does not prohibit the State legislature from drafting an obscenity statute enjoining these forms of expression as a public nuisance.

■■ In sum, we hold that obscenity, in general, is not enjoinable as a public nuisance under section 1 of the Act (Ill. Rev. Stat. 1977, ch. 100½, par. 1). We further hold that the first amendment does not permit a common-law cause of action to enjoin human expression alleged to be obscene as a public nuisance. Accordingly, the order of the circuit court is reversed.

Reversed.

SULLIVAN, P. J., and MEJDA, J., concur.